#26694-a-JKK

**2014 S.D. 39**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                              Plaintiff and Appellee,

    v.

ANDREA J. WOODARD,                              Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE VINCENT A. FOLEY
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

ANN C. MEYER
Assistant Attorney General
Pierre, South Dakota                              Attorneys for plaintiff
                                                  and appellee.


MICHAEL E. MCCANN of
McCann, Ribstein, Hogan & McCarty, PC
Brookings, South Dakota                           Attorneys for defendant
                                                  and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 18, 2014

OPINION FILED **06/25/14**

#26694

KONENKAMP, Justice

[¶1.]        Andrea Woodard appeals her conviction for second offense driving

under the influence (DUI).  She alleges that her predicate DUI conviction was

invalid for sentencing enhancement purposes.

## Background

[¶2.]        Woodard was charged by information with DUI in Brookings County,

South Dakota.  A supplemental information alleged that Woodard had been

convicted of another DUI in Clay County, South Dakota, on February 24, 2009.  The

State asserted that the prior conviction enhanced the new charge to a second

offense DUI under SDCL 32-23-3.

[¶3.]        In response to this allegation, Woodard moved to strike the 2009

conviction from the supplemental information, asserting that the 2009 plea was not

entered knowingly and voluntarily.  In support of her motion to strike the 2009

conviction, Woodard testified on the events that occurred at her arraignment

hearing before the Clay County magistrate court.  The following is what Woodard

alleges transpired.

[¶4.]        On February 24, 2009, Woodard, who was charged with DUI, appeared

in magistrate court in Clay County.[1]  There is no transcript of the hearing.[2]  The

only written records are the information, the arraignment, and a statement-of-

rights form.  Woodard testified that she was called to stand before the magistrate.

---

1.        Woodard was twenty-two years old at the time.

2.        "A verbatim record of a proceeding at which a defendant enters a plea to a
          misdemeanor need not be taken unless requested by the prosecuting attorney
          or the defendant."  SDCL 23A-7-15 (Rule 11(g)).

-1-

She was not represented by counsel. She was then asked to enter a plea to the charge of DUI. Woodard responded that she would plead guilty. The magistrate then gave her a statement-of-rights form. According to Woodard, this was the first time she had seen the form. It was also her first experience with the court system. The magistrate instructed her to read and sign the form. Woodard was extremely nervous. She quickly skimmed through the details of the form and signed it. According to Woodard, the magistrate did not ask whether she had any questions about the form or whether she understood the form.

[¶5.]        The statement-of-rights form specified a number of rights that Woodard was entitled to. Most relevant to this appeal, the form stated:

> 7. Defendant was advised that the burden is on the state to prove every element of the charge beyond a reasonable doubt and was further advised as to his right against self incrimination. Defendant was advised of his right to a speedy trial before a jury or the court in this county and that a jury would have to reach a unanimous verdict before he could be found guilty. Defendant was advised of his right to call and cross examine witnesses and compulsory process.

> 8. Defendant was advised that if he wished to plead guilty he would give up his right to trial, the presumption of innocence, the right to confront and cross examine witnesses and the right not to be compelled to incriminate himself. Defendant was advised that if he pleads guilty or no contest, the court may ask him questions about the offense, and if he answers under oath on the record and in the presence of counsel, his answers may be used against him in a prosecution for perjury.

The form required Woodard to state what crime she was pleading guilty to. Woodard wrote "DUI 1st." The form also requested a factual basis for the plea. Woodard wrote "2-13-09 drove in Clay Co. .206 BAC." Finally, the form stated: "I have been advised of the above rights and understand them. I voluntarily wish to

enter a plea of guilty." That statement was followed by a signature line where both Woodard and the magistrate court signed.

[¶6.]     After considering Woodard's testimony, the circuit court denied Woodard's motion to strike the 2009 conviction. The court concluded that Woodard's testimony did not overcome the presumption of regularity. Woodard was subsequently found guilty of second offense DUI. She was sentenced to 90 days in the Brookings County Detention Center, with 82 days suspended. On appeal, she alleges that the circuit court erred in rejecting her motion to strike the 2009 plea because it was not entered knowingly, intelligently, and voluntarily.

[¶7.]     In moving to strike her 2009 conviction, Woodard does not claim that she is innocent of the predicate conviction. Rather, she "seeks to deprive that conviction of its normal force and effect for sentence-enhancement purposes." *State v. Smith*, 2013 S.D. 79, ¶ 5, 840 N.W.2d 117, 119. Her challenge to the validity of her predicate conviction is a collateral attack; therefore, her plea is subject to less scrutiny than if it were raised on direct appeal. *Id.* (citing *State v. Jensen*, 2011 S.D. 32, ¶ 8, 800 N.W.2d 359, 363). "Further, our review of a collateral attack of a predicate conviction is limited to jurisdictional errors." *Id.* ¶ 6 (citing *Monette v. Weber*, 2009 S.D. 77, ¶ 6, 771 N.W.2d 920, 923). For purposes of a collateral attack on a predicate criminal conviction, we have treated a constitutionally infirm guilty plea as a jurisdictional error. *Id.* (citation omitted). We review the circuit court's findings of fact under the clearly erroneous standard. *Id.* (citation omitted). "And we review the circuit court's conclusions of law de novo." *Id.* (citation omitted).

[¶8.]     To initiate an attack on a predicate conviction, the "defendant has the initial burden of placing the validity of the prior conviction in issue." *Jensen*, 2011 S.D. 32, ¶ 9, 800 N.W.2d at 363 (quoting *Stuck v. Leapley*, 473 N.W.2d 476, 478 (S.D. 1991)). One way a defendant places the validity of a prior conviction in issue is by a motion to strike. *See Smith*, 2013 S.D. 79, ¶ 7, 840 N.W.2d at 119 (citation omitted). Once the defendant has placed the prior conviction in issue the burden shifts "to the State to prove the existence of a prior valid conviction by a preponderance of the evidence." *Id.* (quoting *Jensen*, 2011 S.D. 32, ¶ 9, 800 N.W.2d at 363). "The State meets this burden by presenting a document that 'appears on its face to be a valid judgment.'" *Jensen*, 2011 S.D. 32, ¶ 9, 800 N.W.2d at 363 (quoting *State v. Moeller*, 511 N.W.2d 803, 809 (S.D. 1994)). "If the State meets its burden, the presumption of regularity arises and the burden shifts to the defendant to show that the prior conviction is invalid." *Id.* (citing *Moeller*, 511 N.W.2d at 809-10).

[¶9.]     We have repeatedly acknowledged that "a plea of guilty is more than an admission of conduct; it is a conviction." *Smith*, 2013 S.D. 79, ¶ 8, 840 N.W.2d at 120 (quoting *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274 (1969)). "By pleading guilty, a defendant waives three fundamental constitutional rights: the right against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers." *Id.* (citing *Boykin*, 395 U.S. at 243, 89 S. Ct. at 1712). "A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v.*

*Stumpf*, 545 U.S. 175, 183, 125 S. Ct. 2398, 2405, 62 L. Ed. 2d 143 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469, 25 L. Ed. 2d 747 (1970)). Therefore, it is critical that a defendant is aware of these rights, and then, knowingly and voluntarily relinquishes them by a plea of guilty. *See Monette*, 2009 S.D. 77, ¶ 10, 771 N.W.2d at 924 (citing *Boykin*, 395 U.S. at 243 n.5, 89 S. Ct. at 1712 n.5). Lastly, "the record *in some manner* must show the defendant entered his plea understandingly and voluntarily." *Id.* ¶ 11, 771 N.W.2d at 925 (citation omitted); *see also Rosen v. Weber*, 2012 S.D. 15, ¶ 8, 810 N.W.2d 763, 765.

[¶10.]　　　No transcript is available for Woodard's 2009 guilty plea. Relying on our precedent, Woodard asserts that without a transcript for her 2009 guilty plea the record does not affirmatively show in some manner that her plea was entered knowingly and voluntarily. *See Monette*, 2009 S.D. 77, ¶ 11, 771 N.W.2d at 925. In addition, Woodard submits that there is no evidence of any *Boykin* canvassing. Therefore, Woodard claims that her plea was invalid.

[¶11.]　　　The State, relying on *State v. Moeller*, 511 N.W.2d 803 (S.D. 1994), argues that the mere unavailability of a transcript does not overcome the presumption of regularity. The State stresses that we should not presume that Woodard's guilty plea was constitutionally infirm in light of the presumption of regularity. As we stated above, once the State has introduced a valid judgment of conviction, the presumption of regularity arises, and the burden shifts to the defendant to prove that the prior conviction was invalid. *Smith*, 2013 S.D. 79, ¶ 7, 840 N.W.2d at 119-20. A presumption exists that Woodard's guilty plea was

constitutionally sound. *See Parke v. Raley*, 506 U.S. 20, 30, 113 S. Ct. 517, 523-24, 121 L. Ed. 2d 391 (1992).

[¶12.]       In *Moeller*, we stated that "when no transcripts exist, for whatever reason, absent misconduct by the state, the court will be presumed to have discharged its duty." 511 N.W.2d at 810 (citing *United States v. Dickerson*, 901 F.2d 579, 583 (7th Cir. 1990)). Similarly, the United States Supreme Court has stated, "[o]n collateral review, we think it defies logic to presume from the mere unavailability of a transcript (assuming no allegation that the unavailability is due to governmental misconduct) that the defendant was not advised of his rights." *Parke*, 506 U.S. at 30, 113 S. Ct. at 524. Where no transcript exists, "*Boykin* does not prohibit a state court, from presuming, at least initially, that a final judgment of conviction offered for purposes of sentence enhancement was validly obtained." *Id.*

[¶13.]       Yet Woodard argues that our holding in *Monette* requires a contrary result to *Moeller* and *Parke*. Woodard notes that in *Monette* we stated that "[w]e cannot presume a waiver of [*Boykin*] rights from a silent record." 2009 S.D. 77, ¶ 10, 771 N.W.2d at 925 (citation omitted). Woodard further argues that when no transcript exists, the record is technically silent, which we have deemed insufficient to support a knowing and voluntary waiver of a defendant's *Boykin* rights. *See id.* ¶ 11. And without a transcript, a court cannot "determine from its own record that the accused has made a free and intelligent waiver of [her] constitutional rights . . . ." *Id.*

[¶14.]       While Woodard correctly describes our precedent, this case does not involve a transcript that is "suspiciously silent" on whether Woodard waived her

constitutional rights. There simply is no transcript. *Compare Parke*, 506 U.S. at 30, 113 S. Ct. at 523-24 (rejecting the proposition that a record is "suspiciously silent" because no transcript exists), *with Monette*, 2009 S.D. 77, ¶ 14, 771 N.W.2d at 926 (observing that the transcript was silent as to whether defendant's plea was knowing and voluntary). "To import *Boykin*'s presumption of invalidity into this very different context would . . . improperly ignore another presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights." *Parke*, 506 U.S. at 29, 113 S. Ct. at 523 (citation omitted). A transcript is not suspiciously silent merely because it does not exist. An opposite conclusion would ignore the presumption of regularity and risk invalidating guilty pleas entered years ago that were never challenged on direct appeal.

[¶15.] Furthermore, Woodard's argument, if successful, would undermine the State's valid interest in deterring habitual offenders. *See id.* at 32, 113 S. Ct. at 524-25. The United States Supreme Court recognized this consequence in *Parke*, noting:

> If raising a *Boykin* claim and pointing to a missing record suffices to place the entire burden of proof on the government, the prosecution will not infrequently be forced to expend considerable effort and expense attempting to reconstruct records from farflung States where procedures are unfamiliar and memories unreliable. To the extent that the government fails to carry its burden due to the staleness or unavailability of evidence, of course, its legitimate interest in differentially punishing repeat offenders is compromised.

*Id.*

[¶16.]    Given this reasoning, we reaffirm our holding in *Moeller* that the mere unavailability of a transcript does not overcome the presumption of regularity. *See Moeller*, 511 N.W.2d at 810. Absent other evidence, we presume that the court adequately advised Woodard before accepting her guilty plea.

[¶17.]    Woodard does not rely solely on the unavailability of the transcript to assert that her plea was invalid. She testified that the magistrate court did not canvass her on the waiver of her *Boykin* rights and whether her plea was knowing and voluntary. She alleges that the magistrate intended for the statement-of-rights form to serve as the transcript and a substitute for the canvassing requirement.[3] Therefore, she asserts that here plea was constitutionally infirm.

[¶18.]    While the mere assertion that the defendant does not remember receiving her rights is insufficient to overcome the presumption of regularity, producing credible evidence can overcome the presumption. *Id.* One of the most useful ways to overcome the presumption is to produce the transcript of the plea. *Id.* at 811. But without a transcript, Woodard could only testify about what transpired. Where no transcript exists, it is appropriate for the court to take testimony from those who have appeared regularly in the plea-taking court. *Id.* But no additional evidence was presented to the circuit court.[4] Even without other testimony, however, the circuit court determined that Woodard did not overcome

---

3.    In light of the presumption of regularity in this case, we need not consider whether the statement-of-rights form sufficiently apprised Woodard of her constitutional rights so that her 2009 guilty plea was knowing and voluntary.

4.    Because Woodard was not represented by counsel when she entered the 2009 plea, she could not present evidence from an attorney on whether she was adequately advised.

the presumption of regularity. Therefore, it appears the circuit court simply did not believe Woodard's rendition of the events.

[¶19.]     On occasion, the only evidence that will be presented to the court on the validity of a predicate conviction is the testimony of the defendant. *See Parke*, 506 U.S. at 32, 113 S. Ct. at 524. This might result from a combination of factors such as the evidence going stale, the unavailability of transcripts, or the case being decided in a different jurisdiction. *See id.* In fact, it is not uncommon for a defendant to have superior access to evidence in a collateral attack on a predicate conviction. *Id.* As a result, courts will need to balance the defendant's testimony against the presumption of regularity. This rule requires deference to the trial judge, who had the opportunity to hear first-hand and to determine the credibility of the defendant's testimony. In this case, the circuit court ruled that Woodard did not overcome the presumption of regularity. Without any additional evidence other than Woodard's testimony, we cannot conclude that this finding was clearly erroneous.[5]

[¶20.]     Because Woodard did not overcome the presumption of regularity that attached to her 2009 guilty plea, we uphold the circuit court's denial of Woodard's motion to strike her predicate conviction.[6]

---

5.     Neither side argued whether the guilty plea was knowing and voluntary under the totality of the circumstances. Therefore, we do not reach this issue.

6.     For the reasons explained in Justice Zinter's special writing in *State v. Burkett,* 2014 S.D. 38, ___ N.W.2d ___, and this Court's decision in *State v. Bilben*, 2014 S.D. 24, ¶¶ 18-19, 846 N.W.2d 336, 340, we decline to adopt, at this time, the position the Chief Justice takes in his concurrence in result.

[¶21.] Affirmed.

[¶22.] ZINTER and WILBUR, Justices, concur.

[¶23.] GILBERTSON, Chief Justice, and SEVERSON, Justice, concur in result.

GILBERTSON, Chief Justice (concurring in result).

[¶24.] The Court's analysis appropriately recognizes the State's valid interest in deterring habitual offenders and properly applies the presumption of regularity to the facts of this case. However, I maintain my position in *State v. Bilben*, 2014 S.D. 24, 846 N.W.2d 336 and *State v. Burkett,* 2014 S.D. 38, ___ N.W.2d ___, that defendants should no longer be given the unrestricted power to collaterally attack the validity of predicate convictions used for sentence-enhancement purposes. Accordingly, I concur in the result.

[¶25.] SEVERSON, Justice, joins this special writing.