#26806-rev & rem-LSW

**2014 S.D. 50**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellant,

    v.

RASHUD JAUNTEL SMITH,                     Defendant and Appellee.

    and

STATE OF SOUTH DAKOTA,                    Plaintiff,

    v.

CRICKET LEANNE CORPUZ,                    Defendant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
LYMAN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICIA J. DEVANEY
Judge

* * * *

MARTY J. JACKLEY
Attorney General

CRAIG M. EICHSTADT
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff and
                                        appellant.

AMY R. BARTLING of
Johnson Pochop Law Office
Gregory, South Dakota                   Attorneys for defendant and
                                        appellee Smith.

* * * *

ARGUED ON APRIL 30, 2014
OPINION FILED **07/16/14**

#26806

WILBUR, Justice

[¶1.] The State of South Dakota appeals the circuit court's suppression of cocaine found on Rashaud Smith's person. We reverse and remand.

## FACTS AND PROCEDURAL BACKGROUND

[¶2.] At approximately 1:38 P.M. on November 30, 2012, South Dakota Highway Patrol Trooper Brian Biehl stopped a vehicle driven by Crickett Corpuz for following another vehicle too closely on Interstate 90 in Lyman County, South Dakota. Smith was a passenger in the vehicle. As he approached, Trooper Biehl could smell the odor of marijuana[1] coming from the vehicle. Trooper Biehl informed Corpuz that he intended to write her a warning ticket for the driving infraction and he asked her to come to his patrol vehicle.

[¶3.] Trooper Biehl had Corpuz join him in his patrol vehicle. He asked Corpuz for her driver's license and what her travel plans were. She indicated that she and Smith, who she referred to as her boyfriend, were traveling from Washington to the east coast, where Smith attended school. Corpuz also informed Trooper Biehl that Smith's wallet and identification card had been stolen from her purse preventing Smith from boarding an airplane. During this encounter, Trooper Biehl detected the smell of marijuana coming from Corpuz's person. He informed Corpuz that he could smell marijuana on her. Corpuz then admitted to using marijuana, but that it had been awhile, probably days. She denied smoking

---

1. The record indicates that there is some discrepancy as to whether Officer Biehl smelled the odor of burnt marijuana or the odor of raw marijuana.

-1-

marijuana in the vehicle. Trooper Biehl told Corpuz that he intended to talk with Smith and search the vehicle.

[¶4.] For a second time, Trooper Biehl approached the vehicle and again smelled marijuana. Trooper Biehl asked Smith, who was still sitting in the passenger side of the vehicle, to produce a form of identification. Smith informed Trooper Biehl that his wallet had been stolen and that he did not have an identification card. When Trooper Biehl asked whether Smith attended school on the east coast, Smith replied that he did not, but that he and Corpuz were going to the east coast to visit family. At that point, Trooper Biehl informed Smith that he could smell marijuana on Corpuz and that he could also smell marijuana emanating from the car. Smith then admitted that there was "half a blunt"[2] in the back of the car. Trooper Biehl requested that Smith exit the car for the purpose of searching the vehicle. Trooper Biehl also called for another officer to come and assist him with the stop.

[¶5.] Once Smith exited the car, Trooper Biehl handcuffed Smith and stated, "I'm just gonna put you in handcuffs for my safety." As he was placing Smith's hands in the handcuffs behind Smith's back, Trooper Biehl informed Smith that he was not under arrest and that he was being detained until Trooper Biehl could "find out what [was] . . . going on[.]" When Smith asked why he was being detained, Trooper Biehl responded, "because there's marijuana in the vehicle." Trooper Biehl also asked whether Smith had any weapons on his person and Smith replied that he did not.

---

2. Officer Biehl testified that a "blunt" is a "cigar with marijuana in it."

[¶6.]     At approximately 1:48 P.M., Trooper Biehl patted down Smith's person. In conducting the search, Trooper Biehl lifted Smith's pant leg and found a bulge in his sock. Trooper Biehl testified that he was not able to immediately identify the bulge, but that he "assumed it was probably some of the marijuana that they had been talking about that he had admitted that they had marijuana in the vehicle." Trooper Biehl then removed the bulge and discovered it to be a package of white powder. He asked Smith what the substance in the package was and Smith stated that it was "coke."

[¶7.]     Trooper Biehl then ordered Smith to sit in the ditch while Trooper Biehl searched the vehicle. He found a small plastic bag with 0.1 ounce of marijuana in Corpuz's makeup bag in the rear area of the vehicle, three TracFones with the batteries removed, a bullet, and Smith's wallet containing his identification card, which was located underneath the passenger seat. Another officer arrived on the scene and Trooper Biehl asked that Smith be placed in the other officer's patrol vehicle. Trooper Biehl then returned to his vehicle to speak with Corpuz and advised her that he had found marijuana in her makeup bag. Corpuz responded, "so clearly that's where he [Smith] put it." Trooper Biehl then asked, "It's not yours?" Corpuz again stated that she had not smoked marijuana in several days. During his search, Trooper Biehl also noticed that the kick panel on the rear door of the passenger side was out of place. He requested that the vehicle be towed for further investigation.

[¶8.]     Trooper Biehl advised Corpuz that she was under arrest for possession of marijuana and that he was going to arrest Smith for possession of cocaine. At

approximately 2:15 P.M., Trooper Biehl placed Smith under arrest for possession of cocaine. Smith asked Trooper Biehl why Corpuz was under arrest. When Trooper Biehl told Smith that Corpuz was being arrested for the marijuana in her makeup bag, Smith claimed that it was his marijuana. At approximately 2:17 P.M., Trooper Biehl advised the law enforcement officer transporting Smith to let the jail know that Smith was being arrested for possession of cocaine and possession of marijuana.

[¶9.]    A subsequent search of the passenger door revealed eight, vacuum-sealed, one-half pound packages of marijuana. The driver's side door had also been tampered with, and a search of that door panel revealed eight more, vacuum-sealed, one-half pound packages of marijuana.

[¶10.]    On December 3, 2012, Smith was charged by criminal complaint with possession of a controlled substance, possession of marijuana with intent to distribute, possession of marijuana (less than ten pounds), and possession of drug paraphernalia. A grand jury indicted Smith on the same charges.

[¶11.]    Smith filed a motion to suppress the evidence obtained from the traffic stop. A hearing on that motion was held on May 22, 2013. At the hearing, Trooper Biehl testified that he conducted the pat-down of Smith for safety reasons because he was the only officer present and he was concerned about someone standing behind him while he conducted a search of the vehicle. He further testified that a safety concern was only part of the reason why he searched Smith—he was also searching for contraband because he believed he had probable cause to do so after

smelling marijuana in the vehicle, on Corpuz's person, and after Smith admitted that there was marijuana in the vehicle.

[¶12.] The circuit court suppressed the cocaine seized from Smith's person determining that the State had failed to establish that the warrantless search of Smith's person was justified as a search incident to arrest or as a valid pat-down search. The circuit court also denied the application of the inevitable discovery doctrine to admit the cocaine as evidence. The court denied suppression as to the evidence found in the vehicle. The court filed its memorandum decision on June 27, 2013, and its findings of fact and conclusions of law on August 13, 2013.

[¶13.] The State filed a motion to reconsider the suppression of the cocaine based on the automobile exception to the search warrant requirement on August 1, 2013. The circuit court denied the motion concluding that the automobile exception was inapplicable. Thereafter, the State filed its petition for intermediate appeal and this Court granted that petition on October 11, 2013.

### STANDARD OF REVIEW

[¶14.] We review the circuit court's grant or denial of a motion to suppress involving an alleged violation of a constitutionally protected right under the de novo standard of review. *State v. Leigh*, 2008 S.D. 53, ¶ 7, 753 N.W.2d 398, 401. "The [circuit] court's findings of fact are reviewed under the clearly erroneous standard, but we give no deference to the [circuit] court's conclusions of law." *State v. Mohr*, 2013 S.D. 94, ¶ 12, 841 N.W.2d 440, 444. And "[a]s a general matter[,] determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal." *State v. Hirning*, 1999 S.D. 53, ¶ 9, 592 N.W.2d 600, 603 (quoting

*Ornelas v. United States*, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996)).

## DECISION

[¶15.]     "The Fourth Amendment's prohibition against unreasonable searches and seizures requires generally the issuance of a warrant by a neutral judicial officer based on probable cause prior to the execution of a search or seizure of a person." *Mohr*, 2013 S.D. 94, ¶ 13, 841 N.W.2d at 444 (quoting *State v. Sound Sleeper*, 2010 S.D. 71, ¶ 15, 787 N.W.2d 787, 791). "Warrantless searches are per se unreasonable, apart from a few, [well-delineated] exceptions." *Hirning*, 1999 S.D. 53, ¶ 10, 592 N.W.2d at 603. Search incident to lawful arrest is one of the well-delineated exceptions to the warrant requirement. *State v. Zahn*, 2012 S.D. 19, ¶ 30, 812 N.W.2d 490, 499. "Reasonableness of a search depends on balancing the public's interest in preventing crime with the individual's right to be free from arbitrary and unwarranted governmental intrusions into personal privacy." *Hirning*, 1999 S.D. 53, ¶ 11, 592 N.W.2d at 603.

*Search Incident to Lawful Arrest*

[¶16.]     The State asserts that the search of Smith's person was valid incident to his lawful arrest. The State contends that even though the search of Smith's person occurred prior to his arrest, the search is justified under *Rawlings v. Kentucky*, 448 U.S. 98, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980).

[¶17.]     The circuit court determined that the search of Smith's person did not fall within the search incident to arrest exception to the warrant requirement. It reasoned that Smith was not physically arrested until 27 minutes after the search

of his person. The court noted that Smith was initially arrested for the cocaine found in his sock during the search of his person and not for possession of marijuana found in the vehicle. Additionally, the circuit court concluded that "[e]ven if the subsequent arrest was found to be sufficiently contemporaneous to the search of his person under *Rawlings v. Kentucky*, Biehl clearly did not believe he had probable cause to arrest Smith for possession of marijuana *at the time the pat-down search was conducted*[.]"

[¶18.] "The validity of . . . a [warrantless] search . . . [incident to an arrest] is dependent initially upon" the legality of the arrest itself—"the lawfulness of which is to be determined by state law insofar as the arrest is not violative of the Constitution." *Klingler v. United* States, 409 F.2d 299, 302 (8th Cir. 1969). *See also* SDCL 23A-3-2(2) (providing that a valid arrest without a warrant for a felony or Class 1 misdemeanor must be based upon probable cause that such crime was committed and the person arrested committed it). "The constitutional validity of an arrest is dependent upon the existence of probable cause." *Klingler*, 409 F.2d at 303.

[¶19.] "Probable cause . . . exists where the facts and circumstances within the . . . officers' knowledge and of which they have reasonably trustworthy information are sufficient in themselves to warrant a belief by a person of reasonable caution that a suspect has committed or is committing an offense." *Hirning*, 1999 S.D. 53, ¶ 13, 592 N.W.2d at 604 (quoting *State v. Hanson*, 1999 S.D. 9, ¶ 13, 588 N.W.2d 885, 889). "Probable cause deals with probabilities that are not technical but only the factual and practical considerations of everyday life on which

reasonable and prudent persons, not legal technicians, act." *Id.* "When determining if probable cause existed under various conditions, it makes little difference whether we examine probable cause needed to search or probable cause needed to arrest[,]" because "[g]enerally, 'the same quantum of evidence is required' in either circumstance." *Id.* (quoting 2 Wayne R. LaFave, Search and Seizure § 3.1(b), at 6 (3d ed. 1996)).

[¶20.]     Additionally, probable cause is measured against an objective standard. *In re H.L.S.*, 2009 S.D. 92, ¶ 15, 774 N.W.2d 803, 808 (stating that "[o]ur totality of the circumstances approach to examining probable cause requires us to look at all the facts present before the detaining officer to determine whether a 'particularized and objective basis for suspecting legal wrongdoing' existed at the time of the arrest") (quoting *State v. Noteboom*, 2008 S.D. 114, ¶ 6, 758 N.W.2d 457, 459). *See also State v. Engesser*, 2003 S.D. 47, ¶ 20, 661 N.W.2d 739, 746 (stating that "the trial court must measure [probable cause] against an objective standard"). The officer's "subjective beliefs . . . about . . . whether he had probable cause are individual factors to be considered in the totality of [the] circumstances." *Engesser*, 2003 S.D. 47, ¶ 20, 661 N.W.2d at 746. "The conditions justifying an officer's actions need not be the circumstances forming the officer's state of mind at the time the action is taken." *Id.* ¶ 20, 661 N.W.2d at 746-47. "'As long as the circumstances, viewed objectively, justify the action,' probable cause may be found." *Id.* ¶ 20, 661 N.W.2d at 747 (quoting *Scott v. United States*, 436 U.S. 128, 138, 98 S. Ct. 1717, 1723, 56 L. Ed. 2d 168 (1978)).

[¶21.] Based on the totality of the circumstances, when viewed objectively, probable cause existed for Trooper Biehl to arrest Smith for possession of marijuana prior to the search of Smith's person. Trooper Biehl detected the smell of marijuana emanating from Corpuz and the vehicle. When questioned by Trooper Biehl, Smith admitted that there was "half a blunt" in the back of the car. And while Trooper Biehl testified that he believed he had probable cause to *search* Smith's person based on the circumstances of the stop, Trooper Biehl's subjective belief is just one fact considered in the totality of the circumstances. Furthermore, the same quantum of evidence is required to establish both probable cause to arrest and to search. *Hirning*, 1999 S.D. 53, ¶ 13, 592 N.W.2d at 604. When taken together, we conclude that probable cause existed to arrest Smith for possession of marijuana prior to the search of his person.

[¶22.] Because probable cause existed to arrest Smith for possession of marijuana, the next inquiry is whether the search incident to lawful arrest exception to the warrant requirement applies to this case when the search of Smith's person preceded his arrest and when the arrest was for a crime other than the crime that formed the probable cause to arrest. "A search incident to an arrest must be substantially contemporaneous with, and confined to, the immediate vicinity of the arrest." *State v. Heumiller*, 317 N.W.2d 126, 129 (S.D. 1982). "The warrantless search is justified in order to prevent the removal of weapons which might be used to resist arrest or to effect an escape and to prevent concealment or destruction of evidence." *State v. Rice*, 327 N.W.2d 128, 130 (S.D. 1982). The arrest, however, does not need to occur prior to the search, but the search cannot be

"remote from [the arrest] either in time or place." *State v. Thunder Horse*, 85 S.D. 76, 82, 177 N.W.2d 19, 22 (1970). In *Rawlings*, the Supreme Court of the United States concluded: "Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa[,]" 448 U.S. at 111, 100 S. Ct. at 2564, so long as "[t]he fruits of the search of petitioner's person were . . . not necessary to support probable cause to arrest[.]" *Id.* at 111, n.6, 100 S. Ct. at 2564, n.6.

[¶23.]     The fruit of the subsequent search (cocaine) was not necessary to support probable cause to arrest Smith, because probable cause already existed to arrest Smith for possession of marijuana. Thus, the cocaine seized by Trooper Biehl during the search of Smith's person cannot be said to be "necessary to support probable cause to arrest." *Id.*

[¶24.]     In addition, *Rawlings* does not place an arbitrary limit on how soon an arrest should be made after a search, but the Court did instruct that the arrest should "follow[ ] quickly on the heels of the challenged search[.]" *Id.* at 111, 100 S. Ct. at 2564. Clearly, there is a limit to the amount of time that can elapse between a search and an arrest that will render the subsequent arrest not contemporaneous to the search. We cannot say, under the facts of this case, that an arrest that occurred 27 minutes after the search exceeds the outer limit, especially when the search was a part of a continual transaction leading to the arrest. *See United States*

*v. Sanchez*, 555 F.3d 910 (10th Cir. 2009).[3]  However, even if the subsequent arrest was not sufficiently contemporaneous to the search under the *Rawlings* precedent, the cocaine is admissible because the evidence would have been ultimately discovered in a search of Smith's person incident to his arrest for possession of marijuana.

*Inevitable Discovery Doctrine*

[¶25.]      "Under the exclusionary rule, illegally obtained evidence must be suppressed."  *State v. Shearer*, 1996 S.D. 52, ¶ 21, 548 N.W.2d 792, 796, *rejected on other grounds by State v. Jucht*, 2012 S.D. 66, ¶ 27 n.1, 821 N.W.2d 629, 636 n.1. The inevitable discovery doctrine is an exception to the exclusionary rule.  *Id.*  This exception "applies where evidence may have been seized illegally but where an alternative legal means of discovery . . . *would inevitably have led* to the same result."  *State v. Boll*, 2002 S.D. 114, ¶ 21, 651 N.W.2d 710, 716 (quoting *State v. Wagoner*, 24 P.3d 306, 311 (N.M. Ct. App. 2001)).

[¶26.]      In this case, Trooper Biehl smelled marijuana on Corpuz and in the vehicle, and Smith admitted to the presence of marijuana in the back of the vehicle. Trooper Biehl had probable cause to arrest Smith for possession of marijuana before

---

3.    The Tenth Circuit in *Sanchez* commented that a formal arrest that occurred an hour after the search "seem[ed] to be at the outer limits of 'substantially contemporaneous,' if not beyond."  *Id.* at 920-21 (discussing a situation where the defendant was searched immediately upon apprehension but formal arrest occurred an hour later after the search warrant was executed on the premises where the defendant had been occupying prior to fleeing, the court stated that "[a]n hour would seem to be at the outer limits of 'substantially contemporaneous,' if not beyond[,]" but then deemed the arrest "to have occurred before the formal announcement to a suspect that he is under arrest").

the search of Smith's person. And a search of his person conducted incident to the lawful arrest for possession of marijuana would have inevitably revealed the presence of the cocaine in Smith's sock. Accordingly, the cocaine evidence is admissible under the inevitable discovery doctrine.

## CONCLUSION

[¶27.] We reverse the suppression of the cocaine and remand to the circuit court for proceedings consistent with this opinion.

[¶28.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and SEVERSON, Justices, concur.