#26847, #26849-a-LSW

**2014 S.D. 63**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

LLOYD E. EDWARDS,                         Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JEROME A. ECKRICH, III
Judge

* * * *

MARTY J. JACKLEY
Attorney General

JEFFREY P. HALLEM
KELLY MARNETTE
Assistant Attorneys General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.

ABBY A. REHORST of
Rena M. Hymans, PC
Sturgis, South Dakota                   Attorneys for defendant
                                        and appellant.

* * * *

CONSIDERED ON BRIEFS
ON MAY 27, 2014

OPINION FILED **08/20/14**

#26847, #26849

WILBUR, Justice

[¶1.]        Lloyd Edwards appeals the circuit court's denial of his motion to suppress blood evidence seized without a warrant.  He also appeals the circuit court's denial of his motion to strike his 2003 driving under the influence (DUI) conviction from the part II information.  We affirm.

### FACTS AND PROCEDURAL BACKGROUND

[¶2.]        On March 25, 2013, Officer Nathaniel Borg arrested Edwards for driving or being in actual physical control of a motor vehicle while under the influence of alcohol and driving with a revoked license.  Officer Borg read the following advisement to Edwards:

### DUI Advisement Card

1.     I have arrested you for a violation of SDCL 32-23-1.
2.     Any person who operates any vehicle in the state has consented to the withdrawal of blood or other bodily substance and chemical analysis.
3.     I require that you submit to the withdrawal of your <u>blood</u> (blood, breath, bodily substance).
4.     You have the right to an additional chemical analysis by a technician of your own choosing, at your own expense.

[¶3.]        Officer Borg asked Edwards twice if he understood the advisement, yet Edwards did not respond.  Officer Borg then transferred Edwards to the Meade County jail.

[¶4.]        At the jail, Officer Borg explained to Edwards that blood would be drawn from him and that his refusal would result in the use of a restraint chair in order to forcibly obtain the evidence.  Edwards verbally and physically refused to provide a sample of his blood to law enforcement.  With the help of another officer, Officer Borg placed Edwards in a restraint chair, held a Taser to Edwards's

-1-

abdomen, and threatened to use the Taser if Edwards continued to resist. A blood sample was ultimately obtained from Edwards, without the use of the Taser, while he was seated in the restraint chair.

[¶5.]    On March 27, 2013, Edwards was indicted for driving or control of a vehicle while under the influence of alcohol in violation of SDCL 32-23-1(2), or alternatively, with driving or control of a vehicle while having 0.08 percent or more by weight of alcohol in the blood in violation of SDCL 32-23-1(1). The State filed a part II information alleging that Edwards had two prior DUI convictions within the previous ten years—one conviction in 2003 and one conviction in 2012. Edwards's 2013 charge would constitute a third offense DUI.

[¶6.]    Edwards filed a motion to strike his 2003 conviction from the part II information. Edwards claimed that his 2003 conviction could not be used to enhance his sentence because his guilty plea was not voluntary, knowing, and intelligent. The circuit court ultimately denied Edwards's motion to strike. Findings of fact and conclusions of law regarding Edwards's motion to strike his 2003 conviction from the part II information and an order denying Edwards's motion to strike were entered on September 17, 2013.[1]

---

1.    The record contains two signed and filed sets of findings of fact and conclusions of law pertaining to the motion to strike—the first set, denying the motion to strike, was entered on September 17, 2013, and the second set, granting the motion to strike, was filed on October 25, 2013. In their briefs, both parties refer this Court to the September 17, 2013 findings of fact and conclusions of law for purposes of appellate review. *See* Appellant Brief page 4 n.1; Appellee Brief page 5 n.1. Because neither party asserts that the October 25, 2013 findings of fact and conclusions of law control, we limit our review to the September 17, 2013 set of findings and conclusions.

[¶7.]     In addition to the motion to strike, Edwards filed a motion to suppress blood evidence seized without a warrant. An evidentiary hearing on the motion to suppress was held on June 12, 2013. The circuit court ultimately denied Edwards's motion to suppress. Findings of fact and conclusions of law regarding Edwards's motion to suppress and an order denying the motion were entered on September 17, 2013.[2]

[¶8.]     Edwards's jury trial began on September 18, 2013. The jury found Edwards guilty of driving or control of a vehicle while having 0.08 percent or more of alcohol in the blood pursuant to SDCL 32-23-1(1). Based on a stipulation between the parties, the circuit court entered a guilty verdict to the part II information and found the current offense to be a third offense DUI within a ten-year period. Edwards was sentenced to two years in the state penitentiary. Edwards presents two issues for our review:

> Whether the circuit court erred in denying Edwards's motion to suppress evidence obtained from a warrantless, nonconsensual blood draw.
>
> Whether the circuit court erred in denying Edwards's motion to strike the 2003 conviction from the part II information.

---

2.     The record again contains two signed and filed sets of findings of fact and conclusions of law pertaining to the motion to suppress—the first set, denying the motion to suppress, was entered on September 17, 2013, and the second set, in which the circuit court granted the motion to suppress, was filed on October 25, 2013. In their briefs, both parties refer this Court to the September 17, 2013 findings of fact and conclusions of law for purposes of appellate review. *See* Appellant Brief page 4 n.2; Appellee Brief page 5 n.2. Because neither party asserts that the October 25, 2013 findings of fact and conclusions of law control, we limit our review to the September 17, 2013 set of findings and conclusions.

Pursuant to a notice of review, the State also presents an issue for our review:

> Whether the circuit court erred in failing to hold that the warrantless search conducted under South Dakota's implied consent statutes was constitutional.

## DECISION

I. Whether the circuit court erred in denying Edwards's motion to suppress evidence obtained from a warrantless, nonconsensual blood draw conducted pursuant to SDCL 32-23-10.

[¶9.] We note that in denying the motion to suppress, the circuit court did so pursuant to the "good faith exception to the *warrant requirement*."[3] The circuit court's use of this "warrant exception" was in error, because no such warrant exception exists. Indeed, case law instructs that the good faith exception is an exception to the exclusionary rule. *See Davis v. United States*, ___ U.S. ___, ___, 131 S. Ct. 2419, 2429, 180 L. Ed. 2d 285 (2011) (in discussing the good faith exception to the exclusionary rule, the United States Supreme Court stated "[e]vidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule"); *State v. Sorensen*, 2004 S.D. 108, ¶¶ 8-9, 688 N.W.2d 193, 196-97 (stating that "[u]nder the 'good faith' exception [to the exclusionary rule], 'evidence is admissible when police officers reasonably rely on a warrant that is subsequently invalidated because a judge finds there was an insufficient basis for

---

3. In its holding, the circuit court remarked: "[T]he Court does in this instance find that *McNeely* is retroactive, [and] the Court also finds that the officer acted in good faith and thus the good faith exception to the . . . *warrant requirement* is applicable, and on that basis the defendant's motion to suppress is denied." (Emphasis added.) In its findings and conclusions, the circuit court also stated "Borg was acting in compliance with the law as he understood it at the time, and that was objectively reasonable. Borg acted in *good faith and the good faith exception to the warrant requirement* is applicable." (Emphasis added.)

the issuing magistrate to find probable cause'" (quoting *State v. Saiz*, 427 N.W.2d 825, 828 (S.D. 1988))). "Good faith" is not one of the few, "well-delineated exceptions" to the warrant requirement. *See State v. Zahn*, 2012 S.D. 19, ¶ 30, 812 N.W.2d 490, 499. Because we examine a circuit court's grant or denial of a motion to suppress involving an alleged violation of a constitutionally protected right anew, this error is not determinative. *See State v. Smith*, 2014 S.D. 50, ¶ 14, ___ N.W.2d ___, ___.

[¶10.] "The [circuit] court's findings of fact are reviewed under the clearly erroneous standard, but we give no deference to the [circuit] court's conclusions of law." *Id.* (alterations in original) (quoting *State v. Mohr*, 2013 S.D. 94, ¶ 12, 841 N.W.2d 440, 444). And although "[f]actual findings of the lower court are reviewed under the clearly erroneous standard, . . . once those facts have been determined, 'the application of a legal standard to those facts is a question of law reviewed de novo.'" *State v. Heney*, 2013 S.D. 77, ¶ 8, 839 N.W.2d 558, 561-62 (quoting *State v. Hess*, 2004 S.D. 60, ¶ 9, 680 N.W.2d 314, 319).

*The Fourth Amendment and blood draws*

[¶11.] The Fourth Amendment to the United States Constitution guarantees citizens the right to be free from unreasonable searches and seizures:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Likewise, Article VI, § 11 of our state constitution also guarantees our citizens the right to be free from unreasonable searches and seizures:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause supported by affidavit, particularly describing the place to be searched and the person or thing to be seized.

[¶12.]     "The Fourth Amendment's prohibition against unreasonable searches and seizures requires generally the issuance of a warrant by a neutral judicial officer based on probable cause prior to the execution of a search or seizure of a person." *Smith*, 2014 S.D. 50, ¶ 15, ___ N.W.2d at ___ (quoting *Mohr*, 2013 S.D. 94, ¶ 13, 841 N.W.2d at 444). "Warrantless searches are per se unreasonable, apart from a few, [well-delineated] exceptions[,]" *Smith*, 2014 S.D. 50, ¶ 15, ___ N.W.2d at ___ (first alteration in original) (quoting *State v. Hirning*, 1999 S.D. 53, ¶ 10, 592 N.W.2d 600, 603), and it is the State's burden to prove that the search at issue falls within a well-delineated exception to the warrant requirement. *Hess*, 2004 S.D. 60, ¶ 23, 680 N.W.2d at 324.

[¶13.]     This principle applies to the type of search that is the subject of the present appeal, which involves a compelled, warrantless blood draw for alcohol content to be analyzed and used as evidence in a criminal investigation and prosecution. *See Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 616, 109 S. Ct. 1402, 1412, 103 L. Ed. 2d 639 (1989) (stating that the United States Supreme Court has "long recognized that a 'compelled intrusio[n] into the body for blood to be analyzed for alcohol content' must be deemed a Fourth Amendment search" (alteration in original) (quoting *Schmerber v. California*, 384 U.S. 757, 767-68, 86 S. Ct. 1826, 1833-34, 16 L. Ed. 2d 908 (1966))). This type of invasion involves the individual's "most personal and deep-rooted expectations of privacy[.]" *Winston v.*

*Lee*, 470 U.S. 753, 760, 105 S. Ct. 1611, 1616, 84 L. Ed. 2d 662 (1985).

"Reasonableness of a search depends on balancing the public's interest in preventing crime with the individual's right to be free from arbitrary and unwarranted governmental intrusions into personal privacy." *Hirning*, 1999 S.D. 53, ¶ 11, 592 N.W.2d at 603.

*Exceptions to warrant requirement*

[¶14.]     As it did in *State v. Fierro*, 2014 S.D. 62, ¶ 13, ___ N.W.2d ___, ___, the State argues that under the Fourth Amendment and SDCL 32-23-10,[4] the South Dakota Legislature may constitutionally condition the privilege to drive within the state on a driver providing irrevocable consent to the warrantless withdrawal of blood or other bodily substances.  The State also attempts to justify the warrantless blood draw that occurred in this case under the special needs exception to the warrant requirement.  We disagree with the State's position for the reasons stated in *Fierro*.  *Fierro*, 2014 S.D. 62, ¶¶ 14-16, 21-24, ___ N.W.2d at ___.  Because the State has failed to articulate an exception to the warrant requirement that would permit a compelled, warrantless blood draw, this type of blood draw violates the

---

4.     SDCL 32-23-10 provides:
>      Any person who operates any vehicle in this state is considered to have given consent to the withdrawal of blood or other bodily substance and chemical analysis of the person's blood, breath, or other bodily substance to determine the amount of alcohol in the person's blood and to determine the presence of marijuana or any controlled drug or substance or any substance ingested, inhaled, or otherwise taken into the body as prohibited by § 22-42-15 or any other substance that may render a person incapable of safely driving.  The arresting law enforcement officer may, subsequent to the arrest of any operator for a violation of § 32-23-1, require the operator to submit to the withdrawal of blood or other bodily substances as evidence.

Fourth Amendment of the federal constitution and Article VI, § 11 of our state constitution.

*Good Faith Exception to the Exclusionary Rule*

[¶15.]     We now examine whether suppression is the appropriate remedy for this Fourth Amendment violation.  *See Davis*, ___ U.S. at ___, 131 S. Ct. at 2426 (explaining that the Fourth Amendment "says nothing about suppressing evidence obtained in violation of [its] command.  That rule—the exclusionary rule—is a 'prudential' doctrine created by [the United States Supreme] Court to 'compel respect for the constitutional guaranty'" (citation omitted) (quoting *Elkins v. United States*, 364 U.S. 206, 217, 80 S. Ct. 1437, 1444, 4 L. Ed. 2d 1669 (1960))).  The State argues that the blood sample and test results are admissible pursuant to the good faith exception to the exclusionary rule based upon the officer's reliance on prior case law.  The State cites to the United States Supreme Court's decision in *Davis* for the proposition that suppression is not an appropriate remedy when the officer reasonably relied on a binding court precedent at the time of the search or seizure. We examine the good faith exception de novo.  *Sorensen*, 2004 S.D. 108, ¶ 9, 688 N.W.2d at 197 (citing *United States v. LaMorie*, 100 F.3d 547, 555 (8th Cir. 1996)).

[¶16.]     The exclusion or suppression of evidence is "'not a personal constitutional right,' nor is it designed to 'redress the injury' occasioned by an unconstitutional search." *Davis*, ___ U.S. at ___, 131 S. Ct. at 2426 (quoting *Stone v. Powell*, 428 U.S. 465, 486, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976)).  "The rule's sole purpose . . . is to deter future Fourth Amendment violations." *Id.* (citing *Herring v. United States*, 555 U.S. 135, 141 & n.2 129 S. Ct. 695, 700 & n.2, 172 L. Ed. 2d 496

(2009)). "Where suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly . . . unwarranted.'" *Id.* at ___, 131 S. Ct. at 2426-27 (quoting *United States v. Janis*, 428 U.S. 433, 454, 96 S. Ct. 3021, 3032, 49 L. Ed. 2d 1046 (1976)). "For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." *Id.* at ___, 131 S. Ct. at 2427. "Because the goal of deterrence will not always be advanced by excluding relevant, though illegally seized, evidence, the Supreme Court has identified several exceptions to the exclusionary rule." *Sorenson*, 2004 S.D. 108, ¶ 8, 688 N.W.2d at 197.

[¶17.]       In *Davis*, the United States Supreme Court held that an officer's objectively reasonable reliance on binding court precedent at the time of the search or seizure, even if the precedent is later overruled, satisfies the good faith exception to the exclusionary rule. *Davis*, ___ U.S. at ___, 131 S. Ct. at 2428-29. In so holding, the Court noted that "[p]olice practices trigger the harsh sanction of exclusion only when they are deliberate enough to yield 'meaningfu[l]' deterrence, and culpable enough to be 'worth the price paid by the justice system.'" *Id.* at ___, 131 S. Ct. at 2428 (alteration in original) (quoting *Herring*, 555 U.S. at 144, 129 S. Ct. at 702). The Court further reaffirmed "that the harsh sanction of exclusion 'should not be applied to deter objectively reasonable law enforcement activity.'" *Id.* at ___, 131 S. Ct. at 2429 (quoting *United States v. Leon*, 468 U.S. 897, 918-19, 104 S. Ct. 3405, 3418, 82 L. Ed. 2d 677 (1984)). "Evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." *Id.*

[¶18.]     Following the United States Supreme Court's decision in *Schmerber*, this Court adopted the following rule:

> [B]odily substance samples [are] not subject to the exclusionary rule under the Fourth Amendment if they are taken (1) incident to a lawful arrest, (2) by a reliable and accepted method of obtaining such sample, (3) in a reasonable, medically approved manner, and (4) where there is probable cause to believe that the evidence sought exists.  [*Schmerber*] *held that the elimination of alcohol by natural bodily functions presents exigent circumstances which obviate the necessity of obtaining a search warrant.*

*State v. Hartman*, 256 N.W.2d 131, 134 (S.D. 1977) (emphasis added) (footnotes omitted) (citing *Schmerber*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908).  This rule was consistently applied by this Court and guided the practice of law enforcement officers over the next several decades.  *See, e.g., State v. Mattson*, 2005 S.D. 71, ¶ 44, 698 N.W.2d 538, 552; *State v. Hanson*, 1999 S.D. 9, ¶ 28, 588 N.W.2d 885, 891; *State v. Tucker*, 533 N.W.2d 152, 154 (S.D. 1995); *State v. Lanier*, 452 N.W.2d 144, 145 (S.D. 1990); *State v. Parker*, 444 N.W.2d 42, 44 (S.D. 1989).  These authorities held that the rapid dissipation of alcohol in the body was a per se exigent circumstance that provided law enforcement in South Dakota the authority to conduct warrantless blood draws.  Recently, however, the United States Supreme Court's decision in *Missouri v. McNeely* expressly rejected a per se rule that the natural dissipation of alcohol in the blood alone is an exigent circumstance obviating the need for a warrant prior to a blood draw.  *See id.* ___ U.S. ___, ___, 133 S. Ct. 1552, 1556, 185 L. Ed. 2d 696 (2013).  Instead, the Supreme Court relied on *Schmerber*'s case-by-case analysis in reviewing exigent circumstances based on the totality of the circumstances and held that "the natural dissipation of alcohol in the

bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *Id.* at ___, 133 S. Ct. at 1568. The Supreme Court's holding in *McNeely* was a shift from this Court's previous interpretation of *Schmerber*. *See Siers v. Weber*, 2014 S.D. 51, ¶ 15, ___ N.W.2d ___, ___ (discussing South Dakota's pre-*McNeely* interpretation and application of *Schmerber*).

[¶19.]        Here, Officer Borg arrested and drew Edwards's blood on March 25, 2013—prior to the United States Supreme Court's decision in *McNeely*. At the time of the arrest, Officer Borg was clearly acting in compliance with the law as he understood it at the time, i.e., the rule provided for in *Hartman* and subsequent cases from this Court was that the dissipation of alcohol in blood was a per se exigent circumstance sufficient by itself to justify conducting a blood test without a warrant. Less than a month later, this per se interpretation would be stricken by the United States Supreme Court in *McNeely*. *See id.* at ___, 133 S. Ct. at 1568. Officer Borg acted in good faith reliance on binding court precedent at the time of the search and seizure of Edwards's blood. The good faith exception to the exclusionary rule applies. Accordingly, we affirm the denial of Edwards's motion to suppress.

> II.    Whether the circuit court erred in denying Edwards's motion to strike the 2003 conviction from the part II information.

[¶20.]        Edwards challenges the constitutional validity of his 2003 DUI conviction for enhancement purposes. Edwards contends that his 2003 guilty plea was not voluntary, knowing, and intelligent because he was not "personally advised" of his constitutional rights, the maximum possible penalties, his right to a

preliminary hearing, and the consequences of entering his plea on the day he initially appeared, pleaded, and was sentenced. He also alleges that he was not advised of his *Boykin* rights, specifically his right against self-incrimination and his confrontation rights. *See Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

[¶21.]    In moving to strike his 2003 conviction, Edwards does not claim that he is innocent of the predicate conviction, but rather, he "seeks to deprive that conviction of its normal force and effect for sentence-enhancement purposes." *See State v. Woodard*, 2014 S.D. 39, ¶ 7, ___ N.W.2d ___, ___ (quoting *State v. Smith*, 2013 S.D. 79, ¶ 5, 840 N.W.2d 117, 119). As such, Edwards's challenge is a collateral attack of a predicate conviction, and therefore, his plea is subject to less scrutiny than if it were raised on direct appeal. *Id.* Additionally, "our review of a collateral attack of a predicate conviction is limited to jurisdictional errors." *Id.* (quoting *Smith*, 2013 S.D. 79, ¶ 6, 840 N.W.2d at 119). "For purposes of a collateral attack on a predicate criminal conviction, we have treated a constitutionally infirm guilty plea as a jurisdictional error." *Id.* The circuit court's factual findings "shall not be disturbed unless they are clearly erroneous." *Smith*, 2013 S.D. 79, ¶ 6, 840 N.W.2d at 119 (quoting *Monette v. Weber*, 2009 S.D. 77, ¶ 6, 771 N.W.2d 920, 923). "And we review the circuit court's conclusions of law de novo." *Id.*

[¶22.]    "To initiate an attack on a predicate conviction, the 'defendant has the initial burden of placing the validity of the prior conviction in issue[,]'" such as what was done here—by way of a motion to strike. *Woodard*, 2014 S.D. 39, ¶ 8, ___ N.W.2d at ___ (quoting *State v. Jensen*, 2011 S.D. 32, ¶ 9, 800 N.W.2d 359, 363).

"Once the defendant has placed the prior conviction in issue[,] the burden shifts 'to the State to prove the existence of a prior valid conviction by a preponderance of the evidence.'" *Id.* (quoting *Smith,* 2013 S.D. 79, ¶ 7, 840 N.W.2d at 119). "The State meets this burden by presenting a document that 'appears on its face to be a valid judgment.'" *Id.* (quoting *Jensen*, 2011 S.D. 32, ¶ 9, 800 N.W.2d at 363). "If the State meets its burden, the presumption of regularity arises and the burden shifts to the defendant to show that the prior conviction is invalid." *Id.* (quoting *Jensen*, 2011 S.D. 32, ¶ 9, 800 N.W.2d at 363).

[¶23.]         "*Boykin* requires that before a defendant pleads guilty, he 'be advised of his [federal constitutional] rights relating to self-incrimination, trial by jury, and confrontation,' and 'that [he] intentionally relinquish or abandon known rights.'" *State v. Bilben*, 2014 S.D. 24, ¶ 5, 846 N.W.2d 336, 338 (second and third alterations in original) (quoting *Smith*, 2013 S.D. 79, ¶ 8, 840 N.W.2d at 120). "A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *Woodard*, 2014 S.D. 39, ¶ 9, ___ N.W.2d at ___ (quoting *Bradshaw v. Stumpf*, 545 U.S. 175, 183, 125 S. Ct. 2398, 2405, 162 L. Ed. 2d 143 (2005)). And, "[w]e cannot presume a waiver of these three important federal rights from a silent record." *Smith*, 2013 S.D. 79, ¶ 8, 840 N.W.2d at 120 (quoting *Rosen v. Weber,* 2012 S.D. 15, ¶ 8, 810 N.W.2d 763, 765). *See Woodard*, 2014 S.D. 39, ¶ 9, ___ N.W.2d at ___ (stating that "the record *in some manner* must show the defendant entered his plea understandingly and voluntarily") (quoting *Monette*, 2009 S.D. 77, ¶ 11, 771 N.W.2d at 925). Thus, the issue of whether the

circuit court erred in denying Edwards's motion to strike his 2003 conviction "rests on whether the record 'affirmatively show[s] that the [2003 DUI guilty] plea was voluntary, that the defendant understood the consequences of pleading guilty, and that the defendant explicitly waived the constitutional right against compulsory self incrimination, the right to trial by jury, and the right to confront one's accusers." *See Smith*, 2013 S.D. 79, ¶ 8, 840 N.W.2d at 120 (first alteration in original) (quoting *Monette*, 2009 S.D. 77, ¶ 10, 771 N.W.2d at 925).

[¶24.] On April 25, 2003, Edwards appeared before the Honorable Randall L. Macy in Butte County. At this initial appearance, Judge Macy advised a group of defendants, including Edwards, of their statutory and constitutional rights, including the right to counsel, right to a preliminary hearing/grand jury proceeding, right against self-incrimination, right to a jury trial, and right to confrontation. The group was also advised of the pleas available and the maximum penalty for a class 1 misdemeanor.

[¶25.] Following this advisement, Judge Macy personally addressed Edwards. When asked by the court, Edwards stated that he was present in court for the reading of the rights, heard the rights, and understood them. Edwards then requested a preliminary hearing and the hearing was continued to May 13, 2003.

[¶26.] On May 13, 2003, Edwards once again appeared before Judge Macy. Judge Macy advised a group of defendants, including Edwards, of their statutory and constitutional rights, including the right to counsel, right to a preliminary hearing/grand jury proceeding, right against self-incrimination, right to a jury trial,

and right to confrontation. The group was also advised of the pleas available and the maximum penalty for a class 1 misdemeanor.

[¶27.] Judge Macy then personally addressed Edwards. The court asked Edwards if he was present in court for the reading of the rights, heard the rights, and understood them. Edwards confirmed that he did. The court advised Edwards of his right to have an attorney. Edwards stated that he did not want an attorney and that he intended to plead guilty. The court explained by pleading guilty Edwards would be waiving his "right to a jury trial and all rights that accompany a jury trial." Edwards then pleaded guilty.

[¶28.] Here, the record reflects that in 2003, Judge Macy fully advised Edwards of his *Boykin* rights. Edwards was also advised of the maximum penalty, the consequences of entering his plea, and the right to a preliminary hearing. Edwards was present in the courtroom when the rights were explained en masse. Contrary to Edwards's assertion, a circuit court is not required to "personally" or individually advise each defendant separately of his rights. *See State v. Driver*, 290 N.W.2d 856, 859 (S.D. 1980). In addition to the en masse advisory, Judge Macy then individually canvassed Edwards about his understanding of the rights and that he would be waving his "right to a jury trial *and all* rights that accompany a jury trial." *See Bilben*, 2014 S.D. 24, ¶¶ 7, 12, 846 N.W.2d at 338-39 (stating that this Court recently approved "a general waiver advisement indicating that 'by pleading guilty, you give up all the rights I just read'" (quoting *Smith*, 2013 S.D. 79, ¶ 18, 840 N.W.2d at 124)). Like the advisement given in *Smith* and *Bilben*, "all rights that accompany a jury trial" includes the right against self-incrimination, the

right of confrontation, and the right to trial by a jury. *Id.*; *Smith*, 2013 S.D. 79, ¶ 18, 840 N.W.2d at 124. And, notably, Edwards makes no claim that, under the totality of circumstances, his plea was unknowing or involuntary.[5] Accordingly, the circuit court did not err in denying Edwards's motion to strike his 2003 conviction.

## CONCLUSION

[¶29.] We affirm the denial of Edwards's motion to suppress. And, in addition, we affirm the denial of Edwards's motion to strike his 2003 conviction.

[¶30.] KONENKAMP and ZINTER, Justices, concur.

[¶31.] GILBERTSON, Chief Justice, and SEVERSON, Justice, concur on Issue 1, and concur in result on Issue 2.


GILBERTSON, Chief Justice (concurring in result).

[¶32.] I concur with the Court on Issue One. On Issue Two, I concur in the result and adhere to my dissent in *State v. Bilben*, 2014 S.D. 24, 846 N.W.2d 336.

[¶33.] SEVERSON, Justice, joins this special writing.

---

5.    For the reasons set forth in Justice Zinter's special writing in *State v. Burkett*, 2014 S.D. 38, ___ N.W.2d ___, and the Court's decision in *State v. Bilben*, 2014 S.D. 24, ¶¶ 18-19, 846 N.W.2d 336, 340 and in *State v. Woodard*, 2014 S.D. 39, ¶ 20 n.6, ___ N.W.2d ___, ___ n.6, we decline to adopt, at this time, the position the Chief Justice takes in his concurrence in result.