#28705-r-DG
**2019 S.D. 49**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellant,

    v.

IRWIN SHARPFISH,                    Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE SCOTT BOGUE
Magistrate Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

PAUL S. SWEDLUND
QUINCY R. KJERSTAD
Assistant Attorneys General
Pierre, South Dakota                    Attorneys for plaintiff
                                           and appellant.


ELIZABETH REGALADO of
Pennington County Public
  Defender's Office
Rapid City, South Dakota                    Attorneys for defendant
                                           and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MARCH 25, 2019
OPINION FILED **08/14/19**

#28705

GILBERTSON, Chief Justice

[¶1.]     Irwin Sharpfish was charged in magistrate court with driving under the influence of alcohol.  He filed a motion to suppress evidence obtained from his encounter with law enforcement, which was denied by the magistrate court.  He was convicted following a bench trial and appealed his conviction to the circuit court.  The circuit court reversed Sharpfish's conviction, ordered that his motion to suppress should be granted, and remanded the case.  The State filed a petition for an intermediate appeal from the circuit court's order.  We granted the appeal, but dismissed it as untimely.  Following our decision, the magistrate court ordered that Sharpfish's motion to suppress should be granted in accordance with the circuit court's order.  The State filed a petition for an intermediate appeal from the magistrate court's order, which we granted.  We reverse.

**Facts and Procedural History**

[¶2.]     On August 8, 2015, while on patrol in Rapid City, Officer Garrett Loen received a dispatch at approximately 1:45 a.m. regarding a report of an intoxicated driver.  Officer Loen was advised that a Native American male, about six feet tall, 180 pounds, and wearing jeans and a t-shirt was driving a blue minivan northbound in the Baken Park parking lot towards the Corner Pantry gas station.  Officer Loen was not told the reporting party's identity or provided information regarding why the reporting party believed the driver to be intoxicated.  Officer Loen was in the vicinity and proceeded directly to the Corner Pantry.

[¶3.]     An L3 dashcam recording system on Officer Loen's patrol car captured the event.  The recording began as Officer Loen approached, but because of the

-1-

system's location on the patrol car, it did not capture Officer Loen's observations of the minivan before it stopped at the pump. Officer Loen witnessed the blue minivan driving through the parking lot and coming to a stop at a gas station pump. He did not witness any erratic driving or traffic violations.

[¶4.] The recording shows that Officer Loen pulled up behind the van roughly a car length away. The gas station pumps were brightly illuminated by artificial light. Officer Loen activated his amber warning lights, which he later testified he used to alert others to his presence during non-custodial stops. The van's driver, Sharpfish, had turned off his engine. He had exited the minivan and appeared to be rummaging around for something inside the vehicle as Officer Loen stepped out of his patrol vehicle.

[¶5.] Officer Loen greeted Sharpfish in a conversational manner, and Sharpfish replied, "I'm doing good," and stated that he was just getting gas. He also mentioned something unintelligible about his son having taken something. Officer Loen paused briefly just in front of his patrol vehicle and a few feet behind Sharpfish's minivan to observe Sharpfish. He then approached Sharpfish, who swayed where he stood, slurred his speech, smelled of alcohol, and had bloodshot eyes. As Officer Loen came closer to Sharpfish to stand between him and the pump, Officer Loen informed Sharpfish that someone had called "him" in as an intoxicated driver and asked for his driver's license. Sharpfish complied.

[¶6.] Officer Loen then asked Sharpfish if he had anything to drink that night. Sharpfish denied having anything to drink and initially refused Officer Loen's request to undergo field sobriety tests. Sharpfish eventually agreed to

perform a horizontal gaze nystagmus test, but refused Officer Loen's request to do more tests. As another officer arrived at the scene to assist, Officer Loen placed Sharpfish under arrest for driving under the influence. Officer Loen obtained a warrant for a blood draw, which revealed that Sharpfish's blood alcohol content was 0.222%. Sharpfish was charged in magistrate court with driving under the influence of alcohol, and, in the alternative, driving with a blood alcohol content of 0.08% or more. The State filed a part II information alleging that Sharpfish had a prior conviction in Nevada for driving under the influence of alcohol.

[¶7.] On April 5, 2016, Sharpfish moved to suppress the evidence obtained as the result of his encounter with Officer Loen. He contended that "he was not contacted and detained based on reasonable suspicion" and therefore the "stop" violated the Fourth Amendment of the United States Constitution and Article VI of the South Dakota Constitution. An evidentiary hearing was held in magistrate court. Officer Loen testified and the State introduced a DVD of the encounter captured by the L3 dashcam. On July 25, 2016, the magistrate court denied the motion to suppress. It concluded that Sharpfish had not been seized until Officer Loen developed a reasonable suspicion of Sharpfish's intoxication and confirmed the details of the dispatch.

[¶8.] The magistrate court held a bench trial on September 27, 2016. Officer Loen testified and the dashcam footage was introduced as evidence. The court found Sharpfish guilty of driving under the influence. Sharpfish admitted to the part II information on December 20, 2016, was sentenced to 180 days in jail, and

had his license revoked.  The magistrate court entered a judgment of conviction and Sharpfish appealed to the circuit court.

[¶9.]        The circuit court examined Sharpfish's encounter with Officer Loen and determined that there had not been a consensual encounter that evolved into an investigatory stop, as the magistrate court had concluded.  Rather, the circuit court found that Sharpfish had been seized from the outset because, under the totality of the circumstances, a reasonable person would not have felt at liberty to terminate the encounter.  The circuit court concluded this because Officer Loen was parked behind Sharpfish's van; Officer Loen had activated his amber lights, which to a reasonable person would "signify an official police detention[;]" Sharpfish had been told "he" was the subject of an investigation; Officer Loen "positioned himself in such a way as to limit [Sharpfish's] movement[;]" and Officer Loen was in full uniform and carried a service weapon.  Furthermore, the court concluded that the conclusory tip had not provided Officer Loen with reasonable suspicion to justify the stop.  On June 19, 2017, the court ordered that Sharpfish's motion to suppress evidence should be granted, reversed his conviction, and remanded the case for further proceedings.

[¶10.]        On July 5, 2017, the State petitioned for an intermediate appeal under SDCL 23A-32-5 and SDCL 23A-32-12, which we granted.  *State v. Sharpfish*, 2018 S.D. 63, ¶¶ 11-12, 917 N.W.2d 21, 23 (*Sharpfish I*).  We dismissed the State's appeal, because there was "no basis for an appeal to this Court in SDCL chapter 23A-32 at the present stage of the proceedings[.]"  *Id*. ¶ 14.  Under SDCL 23A-32-6, "[a]n appeal under § 23A-32-4 or 23A-32-5 must be taken within ten days after

written notice of entry of the judgment or order." Similarly, "SDCL 23A-32-12 also references the procedures under SDCL 15-26A-13 that require a petition for discretionary review of an order to be filed within ten days after notice of entry of the order." *Sharpfish I*, 2018 S.D. 63, ¶ 13, 917 N.W.2d at 23. We stated that regardless of which statute that could have granted the State a possible right of intermediate appeal, its July 5 petition was untimely because the State acknowledged that an email from the circuit court on June 19, 2017, regarding its decision "'constitut[ed] notice of entry' of order." *Id*. ¶ 12.

[¶11.] On August 20, 2018, the magistrate court entered its order "act[ing] in accordance with the circuit court's June 19, 2017 decision and order." The magistrate, therefore, granted Sharpfish's motion to suppress. On August 30, the State again petitioned for an intermediate appeal. Following an order to show cause, we granted the State's petition. The issues are:

1. Whether this Court has jurisdiction to hear the State's appeal.

2. Whether Officer Loen seized Sharpfish within the meaning of the Fourth Amendment.

### Analysis and Decision

1. *Whether this Court has jurisdiction to hear the State's appeal.*

[¶12.] "This Court has only such appellate jurisdiction as may be provided by the [L]egislature. The right to appeal is statutory and therefore does not exist in the absence of a statute permitting it." *Wegner v. Siemers*, 2018 S.D. 76, ¶ 4, 920 N.W.2d 54, 55 (quoting *State v. Schwaller*, 2006 S.D. 30, ¶ 5, 712 N.W.2d 869, 871). We "take notice of jurisdictional questions, whether presented by the parties

or not." *Schwaller*, 2006 S.D. 30, ¶ 5, 712 N.W.2d at 871 (quoting *Dale v. City of Sioux Falls,* 2003 S.D. 124, ¶ 6, 670 N.W.2d 892, 894).

[¶13.]    The State contends that we have jurisdiction to hear its appeal under SDCL 23A-32-5, which provides:

> An appeal by a prosecuting attorney may be taken to the Supreme Court from:
>
> (1) An order of a circuit court or a magistrate suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding;
>
> (2) An order of a circuit court or a magistrate sustaining a motion to dismiss a complaint on statutory grounds or otherwise.
>
> An appeal under this section may not be taken after a defendant has been put *in jeopardy* and is not a matter of right but of sound judicial discretion.  Appeals from such orders shall be taken in the same manner as intermediate appeals in subdivision § 15-26A-3(6).  No appeal taken under this section shall delay any trial unless a stay be granted in the discretion of the Supreme Court.

(Emphasis added.)

[¶14.]    Sharpfish argues that we have no jurisdiction under the plain language of SDCL 23A-32-5 for several reasons.  He claims that he has been placed in jeopardy because there has been a bench trial in magistrate court, and "[t]he statute specifically states that once jeopardy attaches the section no longer applies." Sharpfish also contends that the State's appeal is still untimely, because the "magistrate order from August 20, 2018, did not reset the clock or provide the State with new grounds with which to file this appeal."[1]

---

1.    Sharpfish additionally argues that "the circuit court's reversal does not amount to a suppression order as contemplated by the statute."  The order from which the State petitioned for the current appeal was the magistrate's

(continued . . .)

[¶15.]      In response, the State contends that the word "jeopardy" as used in the statute merely "contemplates . . . the constitutional prohibition" against placing defendants in double jeopardy following a judgment of acquittal. Here, it claims there are no such concerns because Sharpfish has not been acquitted. The State argues that at this point, the "appeal from the magistrate's suppression order [is] the same as if the magistrate had erroneously suppressed the evidence in the first place." Finally, the State points out that it "perfected its appeal on August 30, 2018, within the 10-day window provided by SDCL 23A-32-6."

[¶16.]      To establish the meaning of jeopardy in SDCL 23A-32-5, we must construe "words and phrases in a statute [according to] their plain meaning and effect. If the words and phrases in the statute have plain meaning and effect, the court should simply declare their meaning and not resort to a statutory construction." *Wheeler v. Farmers Mut. Ins. Co. of Nebraska*, 2012 S.D. 83, ¶ 20, 824 N.W.2d 102, 108 (internal quotation marks and citations omitted). *See also State v. Bowers*, 2018 S.D. 50, ¶ 16, 915 N.W.2d 161, 166. "This Court is bound by the actual language of applicable statutes and their intent is determined from what the Legislature said and not what this Court thinks it should have said. We assume that statutes mean what they say and that the legislators have said what they meant." *State v. Bordeaux*, 2006 S.D. 12, ¶ 8, 710 N.W.2d 169, 172 (internal quotation marks and citations omitted).

_____

(. . . continued)
    suppression order, not the circuit court's order reversing and remanding judgment.

[¶17.] Jeopardy means "[t]he risk of conviction and punishment that a criminal defendant faces at trial." *Jeopardy*, Black's Law Dictionary (11th ed. 2019). "Jeopardy attaches when the trial commences, and in a jury trial, that occurs when the jury is impaneled and sworn." *State v. Delfs*, 396 N.W.2d 749, 751 (S.D. 1986). In comparison, double jeopardy means the "fact of being prosecuted or sentenced twice for substantially the same offense." *Double Jeopardy*, Black's Law Dictionary (11th ed. 2019). "[T]he Double Jeopardy Clause precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Yeager v. United States*, 557 U.S. 110, 119, 129 S. Ct. 2360, 2366, 174 L. Ed. 2d 78 (2009).

[¶18.] While the State correctly points out that there are no double jeopardy concerns in this case because Sharpfish's conviction in magistrate court has been reversed and he may be re-tried, such a proposition does not acknowledge the fact of "continuing jeopardy." Continuing jeopardy "reflects the reality that the criminal proceedings against an accused have not run their full course." *Bravo-Fernandez v. United States*, ___ U.S. ___, ___, 137 S. Ct. 352, 363, 196 L. Ed. 2d 242 (2016) (internal quotation marks omitted). "[T]he continuation of the initial jeopardy that commenced when the jury was first impaneled" allows the defendant to stand for re-trial after a conviction is overturned on appeal without violating double jeopardy. *Yeager*, 557 U.S. at 118, 129 S. Ct. at 2366.

[¶19.] Although there are no double jeopardy concerns here, that is not relevant to the plain language of the statute. Sharpfish is still in a state of "jeopardy"—the risk of conviction—that has been in place since his bench trial in

magistrate court. *Serfass v. United States*, 420 U.S. 377, 388, 95 S. Ct. 1055, 1062, 43 L. Ed. 2d 265 (1975) ("In a nonjury trial, jeopardy attaches when the court begins to hear evidence."). He still faces his original criminal charges. However, we "take notice of jurisdictional questions, whether presented by the parties or not," and consider whether there is an alternative ground for discretionary appeal under the plain language of a different statute. *Schwaller*, 2006 S.D. 30, ¶ 5, 712 N.W.2d at 871.

[¶20.] Here, jurisdiction is granted under the broad provisions of SDCL 23A-32-12:

> As to *any intermediate order made before trial*, as to which an appeal is not allowed as a matter of right, either the state or the defendant may be permitted to appeal to the Supreme Court, not as a matter of right, but of sound judicial discretion, such appeal to be allowed by the Supreme Court only when the court considers that the ends of justice will be served by the determination of the questions involved without awaiting the *final determination of the action . . . .*

(Emphasis added.) While SDCL 23A-32-5 specifically provides a right for the State to seek direct appeal from magistrate court to the Supreme Court for certain orders in a criminal proceeding, SDCL 23A-32-12 places no limitations on the order coming from circuit court or magistrate court and such appeal may be sought by either party in a criminal case. According to SDCL 23A-32-12, the key determination is whether an order has been given before "trial."

[¶21.] Here, following the order of the circuit court, the magistrate entered an order granting Sharpfish's motion to suppress. In *State v. Koch*, we observed that a magistrate court's order suppressing evidence was not a "final" order because it "did

not dispose of the case." 2012 S.D. 59, ¶ 12, 818 N.W.2d 793, 797.[2] When the magistrate court entered the suppression order, the need for further proceedings before that body was triggered because the State could "dismiss the charges, proceed with the evidence remaining, or attempt to find new evidence to bolster the prosecution." *Id.* ¶ 7, 818 N.W.2d at 795. Thus, the order here was also an "intermediate order made before trial" because, due to the procedural status of the case, there is yet to be a final ruling and multiple avenues are once again open to the State to proceed with prosecution. Moreover, the State timely petitioned from the magistrate court's order within ten days pursuant to SDCL 15-26A-13. Therefore, we address the merits of the State's appeal.

[¶22.] While the special concurrence states that this result relies on reading SDCL 23A-32-5 "in a vacuum," special concurrence ¶ 42, we are bound by the words used by the Legislature and not what we think they should have said. We have noted that while inconsistencies resulting from the plain language of our statutes may seem unreasonable, we still must defer to the words used by the Legislature. *State v. Stunkard*, 28 S.D. 311, 133 N.W. 253, 254 (1911). *See also State v. Wagner*, 86 S.D. 382, 385, 196 N.W.2d 360, 361 (1972); *State v. Nuwi Nini*, 262 N.W.2d 758,

---

2. In *Koch*, while we addressed the finality of a magistrate's suppression order in the context of SDCL 23A-32-5, our discussion is relevant here. In that case, the State attempted to appeal a magistrate's suppression order to the circuit court. *Koch*, 2012 S.D. 59, ¶ 3, 818 N.W.2d at 794. The State argued that a suppression order was a "final order" appealable to circuit court because it effectively disposed of the case. *Id.* ¶ 7, 818 N.W.2d at 795. We held that because suppression orders are not final orders, they are not appealable to the circuit court under SDCL 15-38-22. *Id.* ¶ 12, 818 N.W.2d at 796-97. Rather, we held, the proper grounds for appeal were within SDCL 23A-32-5, which requires appeal of the suppression order in magistrate court directly to this Court. *Id.*

761 (S.D. 1978). Because the State's right to appeal from criminal proceedings is purely statutory and the authority to expand that right rests solely with the Legislature, we should be cautious in interpreting the Legislature's intentions beyond what it clearly expresses.[3]

> 2. *Whether Officer Loen seized Sharpfish within the meaning of the Fourth Amendment.*

[¶23.] "We review the court's grant or denial of a motion to suppress involving an alleged violation of a constitutionally protected right under the de novo standard of review." *State v. Fierro*, 2014 S.D. 62, ¶ 12, 853 N.W.2d 235, 239 (quoting *State v. Smith,* 2014 S.D. 50, ¶ 14, 851 N.W.2d 719, 723). "[F]indings of fact are reviewed under the clearly erroneous standard[.]" *Id.* (quoting *Smith,* 2014 S.D. 50, ¶ 14, 851 N.W.2d at 723). However, the application of the facts to the law is subject to de novo review. *Id.* Here, the facts regarding the encounter between Officer Loen and Sharpfish are undisputed, but the parties dispute the legal characterization of the encounter.

---

3. The special concurrence's reliance on federal cases interpreting 18 U.S.C. § 3731 (2013)—the statute providing for appeal by the United States in a criminal case—is unconvincing. "Double jeopardy" is clearly contemplated by 18 U.S.C. § 3731, which provides in part that "no appeal shall lie where the double jeopardy clause of the United State Constitution prohibits further prosecution." There is no similar reference to double jeopardy in SDCL 23A-32-5. As noted, "jeopardy" and "double jeopardy" are legal terms of art with different meanings. One cannot be read to mean the other without an express indication to the contrary. Additionally, 18 U.S.C. § 3731 provides that "[t]he provisions of this section shall be liberally construed to effectuate its purposes." There is no such liberal grant of interpretation in SDCL 23A-32-5 and we are bound to its express terms and our prior precedent on statutory interpretation.

[¶24.] The State argues that the contact between Officer Loen and Sharpfish was initially consensual, rather than a seizure. It contends that "[n]o detention or seizure occurred here until after [Officer] Loen had a reasonable and articulable suspicion that Sharpfish was intoxicated." In contrast, Sharpfish contends that "it is clear that the contact between Officer Loen and Sharpfish was a stop and seizure from the moment the officer got out of his patrol car."

[¶25.] "The Fourth Amendment protects a person from 'unreasonable searches and seizures.'" *State v. Stanage*, 2017 S.D. 12, ¶ 7, 893 N.W.2d 522, 525 (quoting U.S. Const. amend. IV). Officers may conduct "brief investigative stops" when they have "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* (quoting *Navarette v. California*, 572 U.S. 393, 396, 134 S. Ct. 1683, 1687, 188 L. Ed. 2d 680 (2014)). "The 'reasonable suspicion' necessary to justify such a stop 'is dependent upon both the content of information possessed by police and its degree of reliability[]'" based upon the totality of the circumstances. *Navarette*, 572 U.S. at 397, 134 S. Ct. at 1687 (quoting *Alabama v. White,* 496 U.S. 325, 330, 110 S. Ct. 2412, 2416, 110 L. Ed. 2d 301 (1990)).

[¶26.] Investigatory stops may be based on information provided by informants. However, "[t]he requirement that an officer have reasonable suspicion prior to a stop is not abrogated simply because a third-party informant is convinced a crime occurred." *Stanage*, 2017 S.D. 12, ¶ 10, 893 N.W.2d at 526. Tips must provide sufficient information to allow officers to develop a reasonable suspicion that criminal activity is afoot. *Id.* The stop may be legal if the tip contains more

than conclusory allegations and offers specific and detailed allegations of criminal conduct, even if the officer does not corroborate the criminal conduct before the seizure. *Id.* ¶ 13, 893 N.W.2d at 527-28.

[¶27.] "When an officer is not given an 'explicit and detailed description of alleged wrongdoing,' the officer must have some other reason to believe the informant's conclusion is correct." *Id.* ¶ 11, 893 N.W.2d at 526 (quoting *Navarette*, 572 U.S. at 399, 134 S. Ct. at 1689). The officer must confirm the tip through personal observations of criminal activity, or in the alternative, be aware that the tipster "has special training or experience relating to the conclusion at issue." *Id.* ¶ 11, 893 N.W.2d at 57.

[¶28.] Here, the report that Officer Loen received correctly identified the type and color of Sharpfish's vehicle, the direction he was driving, and a physical description of Sharpfish. However, such innocuous details "do[] not show that the tipster has knowledge of concealed criminal activity." *Florida v. J.L.*, 529 U.S. 266, 272, 120 S. Ct. 1375, 1379, 146 L. Ed. 2d 254 (2000). Officer Loen did not receive a detailed and explicit description of wrongdoing to support the basis of the informant's conclusion that Sharpfish was driving while intoxicated. Nor did he receive any information regarding the identity of the informant or any specialized training or experience the informant had regarding his or her conclusion that Sharpfish was intoxicated. Finally, Officer Loen did not independently observe Sharpfish driving erratically through the parking lot or committing any traffic violations. Therefore, Officer Loen did not have a reasonable suspicion of criminal activity just from the tip alone.

[¶29.] Yet, not all encounters between citizens and police officers constitute Fourth Amendment seizures. *State v. Iversen*, 2009 S.D. 48, ¶ 9, 768 N.W.2d 534, 536. "Only when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may a court conclude that a 'seizure' has occurred." *Id.* ¶ 10 (quoting *Terry v. Ohio*, 392 U.S. 1, 19, n.16, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968)). "The crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *State v. Haar*, 2009 S.D. 79, ¶ 17, 772 N.W.2d 157, 165 (quoting *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389 (1991)).

[¶30.] Whether a reasonable person would have felt free to terminate the encounter is determined by the totality of the circumstances. *United States v. Angulo-Guerrero*, 328 F.3d 449, 451 (8th Cir. 2003).

> Some circumstances which inform our decision-making include: officers positioning themselves in a way to limit the person's freedom of movement, . . . the presence of several officers, the display of weapons by officers, physical touching, the use of language or intonation indicating compliance is necessary, the officer's retention of the person's property, or an officer's indication the person is the focus of a particular investigation.

*Haar*, 2009 S.D. 79, ¶ 17, 772 N.W.2d at 165 (quoting *United States v. Griffith,* 533 F.3d 979, 983 (8th Cir. 2008)). Other relevant factors may include the time of day and use of emergency lights. *See Iversen*, 2009 S.D. 48, ¶ 17, 768 N.W.2d at 539.

[¶31.] Two of our prior decisions are instructive to show what types of circumstances may or may not indicate seizure. In *Iversen*, an officer observed a car

parked with its engine running in a parking lot behind an old gas station at 1:30 in the morning, in an area known for battery thefts. *Id.* ¶ 2, 768 N.W.2d at 535. The officer pulled into the parking lot, focused his spotlight on the vehicle, and exited to contact the passengers. *Id.* The driver rolled his window down as the officer approached. *Id.* ¶ 3. The officer observed the driver's bloodshot, glassy eyes and smelled the odor of alcohol. *Id.* We affirmed the denial of Iversen's motion to suppress, holding that Iversen had not been initially seized because the "officer merely approached a parked vehicle, which the Fourth Amendment permits, and Iversen simply encountered a police officer in a public place." *Id.* ¶ 19, 768 N.W.2d at 539. When Iversen rolled down his window and the officer immediately observed signs of intoxication, "there was a reasonable suspicion for the officer to detain Iversen to investigate possible wrongdoing." *Id* ¶ 18.

[¶32.] In contrast, the circumstances in *Haar* that led us to conclude that an officer effectuated an investigatory detention, rather than engaged in a consensual encounter, are largely not present here. *Haar*, 2009 S.D. 79, ¶ 20, 772 N.W.2d at 166-67. In that case, we considered the remote location of the stop at a rest area on I-90 where Haar and his passenger were alone except for the officer; the officer placing himself to block Haar's access to his vehicle during the encounter; the manner in which the officer parked his patrol vehicle, restricting Haar's ability to drive away from the rest area; the investigatory tone with which the officer began the conversation; and the officer's show of authority by releasing a drug dog at the same time he said that Haar was free to leave. *Id.*

[¶33.] Here, although late at night, the encounter was at a well-lit area in a gas station by a busy intersection in Rapid City. Sharpfish was already parked. Officer Loen pulled up a car length behind Sharpfish's van, but did not disrupt the minivan's egress from the parking lot. Officer Loen exited his vehicle and approached on foot. Adopting a conversational tone and not raising his voice, Officer Loen asked a question about how Sharpfish was doing, all the while keeping a respectable distance and not preventing Sharpfish from going about his business or restricting his ability to get back into his vehicle. Although dressed in full uniform, carrying a service weapon, and driving a marked patrol vehicle, Officer Loen made no other outward signs of authority or force. Also, while Officer Loen activated his amber lights, at least one court has held that the use of amber warning lights does not constitute a stop when other surrounding circumstances indicate a seizure has not taken place, such as when, like here, an officer parks behind a suspect's vehicle and approaches on foot. *State v. Halfmann*, 518 N.W.2d 729, 730 (N.D. 1994) ("Halfmann argues a Fourth Amendment 'stop' occurred when Officer King pulled up behind her car, activated his amber lights, and approached her car by foot. Under these circumstances, we disagree."). Furthermore, the use of a spotlight in *Iversen* was not considered to be a circumstance that indicated a seizure took place because, like here, the patrol vehicle's emergency lights had not been activated and the surrounding circumstances did not suggest a seizure. 2009 S.D. 48, ¶ 17, 768 N.W.2d at 539. Based on the totality of the circumstances here, a seizure did not initially occur.

[¶34.] Officer Loen testified at the evidentiary hearing that he almost immediately noticed clear signs of intoxication. Once Officer Loen began telling Sharpfish about the report he had received and indicating he was the subject of an investigation, enough time had passed for Officer Loen to develop a reasonable suspicion of criminal activity based on Sharpfish's appearance and behavior. Therefore, Officer Loen developed a reasonable suspicion of intoxication after greeting Sharpfish, but before seizing him.

## Conclusion

[¶35.] We have jurisdiction to hear this appeal. Furthermore, Officer Loen developed a reasonable suspicion of criminal activity before seizing Sharpfish. Therefore, the magistrate court's order suppressing evidence obtained from the stop is reversed.

[¶36.] KERN, Justice, and SEVERSON, Retired Justice, concur in result.

[¶37.] JENSEN and SALTER, Justices, dissent.

KERN, Justice (concurring in result).

[¶38.] I agree that this Court has appellate jurisdiction in this case. I also join the analysis reversing the order of the magistrate court suppressing evidence. I write specially because, in my view, only SDCL 23A-32-5 provides this Court with appellate jurisdiction over an order of suppression entered in magistrate court.

[¶39.] It is well settled that "[t]his Court has only such appellate jurisdiction as may be provided by the [L]egislature." *Wegner v. Siemers*, 2018 S.D. 76, ¶ 4, 920 N.W.2d 54, 55 (quoting *State v. Schwaller*, 2006 S.D. 30, ¶ 5, 712 N.W.2d 869, 871).

Here, the State has appealed the magistrate court's order granting Sharpfish's motion to suppress. Importantly, our dismissal of the State's appeal in *Sharpfish I* did not invalidate the circuit court's order. That order, in no ambiguous terms, reversed the magistrate court's judgment of conviction and remanded the matter for further proceedings. On remand, the magistrate court entered an order suppressing the State's evidence, and the State has appealed.

[¶40.]        As it relates to an appeal from a magistrate order granting suppression, the Legislature "has provided a mechanism for appellate review" via SDCL 23A-32-5. *State v. Koch*, 2012 S.D. 59, ¶ 9, 818 N.W.2d 793, 795–96. In fact, in *Koch*, we specifically recognized that the Legislature granted this Court (not circuit courts) appellate jurisdiction to consider a magistrate order suppressing evidence. *Id.* ¶ 14. By comparison, we have recognized that SDCL 16-6-10 provides the circuit court (not this Court) with exclusive appellate jurisdiction from all judgments and orders of magistrate court. Under SDCL 16-6-10, "[t]he circuit court has jurisdiction of appeals from all final judgments, decrees, or orders of all courts of limited jurisdiction, inferior officers, or tribunals, in the cases prescribed by statute." Therefore, "with the one exception provided by SDCL 23A-32-5 (appeals by the State from certain pre-trial orders of a magistrate), there is no right of direct appeal from magistrate court to the Supreme Court." *Schwaller*, 2006 S.D. 30, ¶ 8, 712 N.W.2d at 871 (quoting *Dale v. City of Sioux Falls*, 2003 S.D. 124, ¶ 8, 670 N.W.2d 892, 895 (dismissing a direct civil appeal from magistrate court)); *see also State v. Hoxeng,* 315 N.W.2d 308, 309 (S.D. 1982).

[¶41.]        SDCL 23A-32-5 provides that "[a]n appeal by a prosecuting attorney may be taken to the Supreme Court from: (1) An order of a circuit court or a magistrate suppressing or excluding evidence[.]"  The State's appeal in this case is from a suppression order of a magistrate entered upon remand by the circuit court. Sharpfish, however, argues that no jurisdiction exists because he was placed in jeopardy when the magistrate judge took evidence in the court trial, regardless of the fact he appealed his guilty verdict and obtained a favorable decision reversing the magistrate's decision denying the motion to suppress.  He highlights that SDCL 23A-32-5 precludes an appeal "after a defendant has been put in jeopardy[.]"

[¶42.]        While it is undisputed that jeopardy attached when the magistrate judge took evidence in Sharpfish's trial, I disagree that the phrase "put in jeopardy" reflects Legislative intent to prohibit an appeal to this Court from a magistrate's suppression order entered on remand from circuit court.  It is fundamental to our rules of statutory interpretation that we examine the statute as a whole to determine Legislative intent, and in doing so, we must refrain from isolating any particular phrase. *See State v. Johnsen*, 2018 S.D. 68, ¶ 9, 918 N.W.2d 876, 878.  To conclude otherwise and read "put in jeopardy" in a vacuum would require us to conclude the Legislature intended to deprive the State of its right to seek appellate review when a defendant first loses (and then prevails post-trial) in a request that evidence be suppressed.  Yet SDCL 23A-32-5 does not limit appellate review to only *pre-trial* magistrate suppression orders.  Thus, I would read the phrase in context and conclude that "put in jeopardy" indicates Legislative intent to permit

government appeals of magistrate orders suppressing evidence unless reversal on appeal would offend jeopardy principles.

[¶43.] The term "jeopardy" is "ancient" and has been used in the criminal law context to describe that "no man is to be brought into jeopardy of his life more than once for the same offense." *See United States v. Wilson*, 420 U.S. 332, 340, 95 S. Ct. 1013, 1020, 43 L. Ed. 2d 232 (1975) (quoting 4 W. Blackstone, Commentaries *335–36). As such, federal courts, including the United States Supreme Court, have interpreted similar federal statutory language as an indication of Congressional intent to permit government appeals from the suppression and exclusion of evidence in criminal proceedings so long as the appeals are constitutionally permissible. *United States v. Beck*, 483 F.2d 203, 205 (3d Cir. 1973); *see also Wilson*, 420 U.S. at 344, 95 S. Ct. at 1022; *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 570, 97 S. Ct. 1349, 1354, 51 L. Ed. 2d 642 (1977); *United States v. Harshaw*, 705 F.2d 317, 319 (8th Cir. 1983); 7 Wayne R. LaFave et al., *Criminal Procedure* § 27.3(b) (4th ed. 2018); Bordeau, 12A Fed. Proc. L. Ed. 33:756.

[¶44.] In *Wilson*, the United States Supreme Court examined "jeopardy" principles "to determine more precisely the boundaries of the Government's appeal rights in criminal cases." 420 U.S. at 339, 95 S. Ct. at 1020. In doing so, the United States Supreme Court concluded that the Double Jeopardy Clause "was directed at the threat of multiple prosecutions, not at Government appeals, at least where those appeals would not require a new trial." *Id.* at 342, 95 S. Ct. at 1021. Therefore, "where there is no threat of either multiple punishments or successive

prosecutions, the Double Jeopardy Clause is not offended." *Id*. at 344, 95 S. Ct. at 1022.

[¶45.] The Eighth Circuit Court of Appeals concluded the same in *Harshaw*, 705 F.2d at 319. The court examined 18 U.S.C. § 3731, which provides that the United States may appeal "a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been *put in jeopardy* and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." (Emphasis added.) The court then interpreted "put in jeopardy" to mean that "no government appeal may lie if the defendant's rights under the double jeopardy clause would be violated should the government prevail in its appeal." *Harshaw*, 705 F.2d at 319. The Eighth Circuit declined to construe the federal statute permitting Government appeals "in a vacuum." *Id*. "Due consideration must be given to the evil that the statute was meant to address as well as the purpose Congress intended the language of the statute to serve." *Id*. Moreover, as the court in *Beck* recognized, "it has been long settled that this constitutional guarantee imposes no limitations upon the power to retry a defendant who seeks and procures reversal of his conviction." 483 F.2d at 206–07.

[¶46.] This Court reached a similar result in *State v. Reath*, 2003 S.D. 144, ¶ 6, 673 N.W.2d 294, 296, in response to the State's attempt to appeal a judgment of acquittal. While the result in *Reath* is correct, our single sentence indicating the

appeal was not permitted under SDCL 23A-32-5 because "the defendant was placed in jeopardy" was unnecessary and should be regarded as dicta and not a binding principle of our jurisprudence. *Reath* concerned an appeal of a judgment of *acquittal*, not an appeal of an order excluding evidence, requiring the return of seized property, or dismissing a complaint.

[¶47.] Here, in contrast, we have jurisdiction to consider this appeal under SDCL 23A-32-5 because a successful appeal by the State would not offend jeopardy principles; it would result in an order reversing that decision and remanding for the magistrate judge to reinstate the original judgment of conviction. Although I believe jurisdiction exists under SDCL 23A-32-5, the various writings in this case warrant intervention by the Legislature to clarify its intent. Indeed, this Court was unable to reach a majority view on which statute if any affords appellate jurisdiction. Therefore, I would call on the Legislature to clarify that the phrase "put in jeopardy" in SDCL 23A-32-5 means, as other courts have concluded, to "put in risk of double jeopardy."

[¶48.] SEVERSON, Retired Justice, joins this concurrence in result.


SALTER, Justice (dissenting).

[¶49.] I am unable to join the plurality view finding the existence of appellate jurisdiction here because neither of the statutes under consideration authorizes this appeal. In the case of SDCL 23A-32-5, I believe the Chief Justice's opinion correctly holds that appellate jurisdiction is foreclosed by its clear and unambiguous text. The text of SDCL 23A-32-12 is arguably more adaptable to appellate jurisdiction of

this suppression order, but our prior decisions have sharply limited our jurisdiction to consider appeals directly from magistrate courts. The State's silence on SDCL 23A-32-12 as a proposed basis for jurisdiction and its untimely appeal in *Sharpfish I* further counsel against applying the statute here. I must, therefore, respectfully dissent.

[¶50.]     I agree with the Chief Justice's opinion and Justice Kern's special writing insofar as they express the accepted view that our authority to hear and decide appeals is solely a function of legislative enactment—not explicit authority from our Constitution. Indeed, our Constitution expressly defers the creation of appellate jurisdiction to the Legislature by stating simply that "[t]he Supreme Court shall have such appellate jurisdiction as may be provided by the Legislature[.]" S.D. Const. art. V, § 5.

[¶51.]     Perhaps as an acknowledgment of our inability to unilaterally create our own jurisdiction, we have historically been circumspect when determining whether appellate jurisdiction exists. *See, e.g.*, *State v. Stenstrom*, 2017 S.D. 61, ¶ 15, 902 N.W.2d 787, 791 (holding no statute authorizes appellate review of actions taken by a drug court program). We have refused, for instance, to tacitly accept the existence of appellate jurisdiction or overlook the failure of the parties to raise the issue in their submissions. *Johnson v. Lebert Constr., Inc.*, 2007 S.D. 74, ¶ 4, 736 N.W.2d 878, 879. Instead, we have perceived an independent obligation "to take notice of jurisdictional questions, whether presented by the parties or not[,]" reasoning that "[t]he appellate jurisdiction of this Court will not be presumed but must affirmatively appear from the record." *State v. Mulligan*, 2005 S.D. 50, ¶ 4,

696 N.W.2d 167, 168 (quoting *Double Diamond v. Farmers Co-op. Elevator*, 2003 S.D. 9, ¶ 6, 656 N.W.2d 744, 746).

### *Appellate Jurisdiction under SDCL 23A-32-5*

[¶52.] We apply traditional rules of statutory construction to determine whether the Legislature has created appellate jurisdiction to review a particular order or judgment. *Id.* (citing *Double Diamond*, 2003 S.D. 9, ¶ 7, 656 N.W.2d at 746). Among the myriad canons for construing statutes, only two closely connected rules are implicated here. First, we recognize that construction, in the true sense, is unnecessary and ill-advised "[w]hen the language of a statute is clear, certain and unambiguous[.]" *Zoss v. Schaefers*, 1999 S.D. 105, ¶ 6, 598 N.W.2d 550, 552 (citations omitted). In these instances, "there is no occasion for construction, and the court's only function is to declare the meaning of the statute as clearly expressed in the statute." *Id.*

[¶53.] The other rule is equally self-evident and is, in some respects, less a method for construing text and more a recognition of our constitutional role:

> The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said. *We cannot add language that simply is not there. Nor can we rewrite the language of the statute as this is an action reserved for the Legislature.*

*In re Estate of Flaws*, 2016 S.D. 60, ¶ 44, 885 N.W.2d 336, 349 (internal quotations and citations omitted) (emphasis added).

[¶54.] The relevant portion of SDCL 23A-32-5's text provides as follows:

> An appeal by a prosecuting attorney may be taken to the Supreme Court from:

> (1) An order of a circuit court or a magistrate suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding;
>
> (2) An order of a circuit court or a magistrate sustaining a motion to dismiss a complaint on statutory grounds or otherwise.
>
> An appeal under this section may not be taken after a defendant has been put in jeopardy and is not a matter of right but of sound judicial discretion.

[¶55.] The statute envisions a narrow class of permissible appeals. Under its terms, only certain enumerated orders in criminal cases are appealable by the prosecution and, even then, only if the defendant has not been "put in jeopardy." The term "jeopardy" has great potential significance in the area of criminal law, but the legal definition is very much like its colloquial one. Jeopardy means simply the imminent risk of injury and, in a legal context, it means specifically the risk of a criminal conviction and the corresponding potential for punishment. *See Jeopardy*, *Black's Law Dictionary* (11th ed. 2019).

[¶56.] The point at which the risk becomes acute and jeopardy attaches can vary slightly with the type of criminal trial. For instance, in jury trials, jeopardy attaches when the jury is empaneled and sworn. *State v. Catch The Bear*, 352 N.W.2d 637, 638 (S.D. 1984). In court trials, a defendant is placed in jeopardy when the first witness is sworn to testify. *Crist v. Bretz*, 437 U.S. 28, 37 n.15, 98 S. Ct. 2156, 2162 n.15, 57 L. Ed. 2d 24 (1978). In certain court trials, such as the one here, where the evidence consists solely of stipulated facts or testimony, jeopardy attaches when the court considers the evidence. *See Finch v. United States*, 433 U.S. 676, 677, 97 S. Ct. 2909, 2910, 53 L. Ed. 2d 1048 (1977) (per curiam) (court's consideration of stipulated facts signaled attachment of jeopardy); *see also Serfass v.*

*United States*, 420 U.S. 377, 388, 95 S. Ct. 1055, 1062, 43 L. Ed. 2d 265 (1975) (holding that jeopardy attaches in a court trial when the judge "begins to hear evidence").

[¶57.]     We have held the attachment of jeopardy ends the possibility of an appeal under SDCL 23A-32-5. *See State v. Reath*, 2003 S.D. 144, ¶ 6, 673 N.W.2d 294, 296 (per curiam).  In *Reath*, we dismissed the prosecution's appeal of an order granting the defendant's motion for judgment of acquittal in the midst of a jury trial, concluding we lacked appellate jurisdiction.  *Id.* ¶ 1, 673 N.W.2d at 295.  Among the statutes we considered as a potential basis for appellate jurisdiction was SDCL 23A-32-5, but we quickly recognized its unsuitability and held simply, "[w]ith a jury having been empanelled, SDCL 23A-32-5 cannot apply to this appeal because the defendant was placed in jeopardy."  *Id.* ¶ 6, 673 N.W.2d at 296.

[¶58.]     Here, therefore, the same rule applies, and SDCL 23A-32-5 cannot sustain appellate jurisdiction.  Jeopardy attached at Sharpfish's court trial when the magistrate judge considered the parties' stipulated facts offered as evidence by the State.  Given the clear and unambiguous language of SDCL 23A-32-5 prohibiting an appeal "after a defendant has been put in jeopardy" and our previous holding in *Reath*, I am unable to conceive of a different result.

[¶59.]     I can understand Justice Kern's inclination to look to 18 U.S.C. § 3731 for guidance, but its assistance to this case is ephemeral.  Section 3731 authorizes federal prosecutors to appeal certain pretrial orders in criminal cases, including orders excluding evidence, as long as they were not made "after the defendant has

been put in jeopardy . . . ." Critically, however, this is where any similarity between § 3731 and SDCL 23A-32-5 ends.

[¶60.] The full text of § 3731's jeopardy limitation is contained in the statute's second paragraph and prohibits an appeal of an order made "after the defendant has been put in jeopardy *and before the verdict or finding on an indictment or information*[.]" (Emphasis added.) This limitation does not reference "double jeopardy" and federal courts have generally held it to be temporal—not a constitutional reference to the prohibition against double jeopardy. *See United States v. Ceccolini*, 435 U.S. 268, 271 n.1, 98 S. Ct. 1054, 1057 n.1, 55 L. Ed. 2d 268 (1978) (recognizing the appealability of a post-trial order suppressing evidence, holding, "[i]f Congress had intended only pretrial suppression orders to be appealable, it would not have added the phrase 'and before the verdict or finding on an indictment or information.'"); *United States v. Beck*, 483 F.2d 203, 205 (3d. Cir. 1973) (holding that restriction for reviewing suppression orders made after the defendant is placed in jeopardy and before a verdict is intended to avoid an interruption in the trial).

[¶61.] Section 3731 does forbid appeals "where the double jeopardy clause of the United States Constitution prohibits further prosecution[,]" but that restriction is listed separately from the provision relating to interlocutory orders. The "double jeopardy" limitation is contained in the first paragraph of § 3731, which authorizes Government appeals for certain orders that are often final and can have the effect of

ending the prosecution or nullifying its result, including the dismissal of an indictment and an order granting a new trial.[4]

[¶62.]    Regardless, though, the Chief Justice's opinion and Justice Kern's special writing correctly conclude that Sharpfish does not face the prospect of an unconstitutional successive prosecution.  Indeed, the Chief Justice's exposition of the doctrine of continuing jeopardy aptly illustrates the reason why no risk of double jeopardy exists—because Sharpfish remains in continuing jeopardy.  *See Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 308, 104 S. Ct. 1805, 1813, 80 L. Ed. 2d 311 (1984) (recognizing continuing nature of jeopardy where it has not terminated but, rather, continues because criminal proceedings "have not run their full course" (quoting *Price v. Georgia*, 398 U.S. 323, 326, 90 S. Ct. 1757, 1759, 26 L. Ed. 2d 300 (1970))).

[¶63.]    The Chief Justice's opinion also demonstrates the peril of conflating the "jeopardy" limitation regulating the time for appeal under SDCL 23A-32-5 with

---

4.    Although the United States Supreme Court has held that § 3731 was designed to remove all statutory barriers to Government appeals and allow them when they are constitutionally permissible, it did so in its principal cases when considering the explicit "double jeopardy" limitation contained in the first paragraph of § 3731—not the provision contained in the second paragraph relating to interlocutory orders made after the defendant is put in jeopardy.  *See United States v. Wilson*, 420 U.S. 332, 352-53, 95 S. Ct. 1013, 1026, 43 L. Ed. 2d 232 (1975); *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 575, 97 S. Ct. 1349, 1356, 51 L. Ed. 2d 642 (1977).  Because of these important textual differences within the statute, the First Circuit Court of Appeals has cautioned against relying upon *Wilson* and *Martin Linen* for jurisdictional issues implicating the second paragraph of § 3731.  *See United States v. Kane*, 646 F.2d 4, 6 (1st Cir. 1981) (noting that distinguishing context limits the utility of *Wilson* and *Martin Linen* for appeals implicating the second paragraph of § 3731); *United States v. Watson*, 386 F.3d 304, 307-08 (1st Cir. 2004) (same).

the general constitutional prohibition against successive prosecutions.  They are two perceptibly different concepts, and we cannot justify a failure to read the plain text of SDCL 23A-32-5's temporal, pre-jeopardy limitation with the incongruent assurance that doing so does not violate double jeopardy.  In this case, jeopardy has long since attached and continued without abatement, and because SDCL 23A-32-5—unlike 18 U.S.C. § 3731—contains no terminal point for limiting the time restriction for appeals, the explicit text of SDCL 23A-32-5 prohibits an appeal.

### *Appellate Jurisdiction under SDCL 23A-32-12*

[¶64.]       The provisions of SDCL 23A-32-12 permit discretionary appeals of intermediate or interlocutory orders entered "before trial . . . when the court considers that the ends of justice will be served[.]"  Even if, as the Chief Justice suggests, the text of this statute might permit a direct appeal from magistrate court to this Court, this case is not well-suited to consider its applicability for several reasons.

[¶65.]       First, the State has not argued that SDCL 23A-32-12 is a potential basis for appellate jurisdiction.  Although we are, of course, free to examine the limits of our jurisdiction, we have generally done so to determine the existence of appellate jurisdiction when the parties have overlooked the issue entirely.  *See, e.g.*, *Estate of Putnam*, 254 N.W.2d 460, 461 (S.D. 1977) ("[T]his court is required, sua sponte, to determine its jurisdiction to consider the merits of this appeal.").

[¶66.]       In addition, the assertion of appellate jurisdiction under the provisions of SDCL 23A-32-12 creates conspicuous tension with our precedent.  For nearly forty years, we have consistently held that we lack authority to consider direct

appeals from magistrate court with only one notable exception—appeals by the prosecution under the provisions of SDCL 23A-32-5. *State v. Hoxeng*, 315 N.W.2d 308, 309 (S.D. 1982); *see also Dale v. City of Sioux Falls*, 2003 S.D. 124, ¶ 9, 670 N.W.2d 892, 895-96 (civil action removed from small claims court and tried by magistrate judge could not be directly appealed to the Supreme Court); *State v. Schwaller*, 2006 S.D. 30, ¶ 8, 712 N.W.2d 869, 871-72 (defendant seeking review of misdemeanor conviction could not appeal directly to the Supreme Court); *Wegner v. Siemers*, 2018 S.D. 76, ¶ 1, 920 N.W.2d 54, 54-55 (the Supreme Court lacked appellate jurisdiction to consider an appeal of a permanent protection order issued by a magistrate judge).

[¶67.]    Abruptly shifting the course of our decisional law by holding we now have appellate jurisdiction to consider direct appeals from magistrate court under SDCL 23A-32-12 creates unnecessary uncertainty. In my view, it would be far more preferable to wait to confront this issue until we have the benefit of the parties' briefing in an appeal where the construction of SDCL 23A-32-12 and the impact of the *Hoxeng* line of cases is squarely presented.

[¶68.]    Finally, this case seems an unlikely appellate vehicle to forge a new rule for direct appeals from magistrate court. The State had an opportunity to perfect a cognizable appeal from a circuit court order under SDCL 23A-32-12 in *Sharpfish I*, and simply failed to do so.

[¶69.]    For the reasons expressed in this writing, I would, therefore, simply read SDCL 23A-32-5 as it is written, avoid the precipitous expansion of our

decisions that restrict direct appeals from magistrate court, and dismiss this appeal.

[¶70.]        JENSEN, Justice, joins this dissent.